THE CHAMBER OF COMMERCE OF THE CITY OF NEWARK, NEW JERSEY, RESPONDENT, v. COUNTY OF ESSEX AND NORTHERN CONSTRUCTION COMPANY, A CORPO-RATION, ET AL., APPELLANTS.

---

THE CHAMBER OF COMMERCE OF THE CITY OF NEWARK, NEW JERSEY, RESPONDENT. v. COUNTY OF ESSEX AND J. B. GILLIGAN–CASEY COMPANY, APPELLANTS.

Argued March 11, 1921—Decided June 20, 1921.

1. Under section 1128 of the act entitled "An act concerning coun-ties," and known as the County Home Rule act (*Pamph. L.* 1918, *ch.* 185, as amended by *Pamph. L.* 1920, *ch.* 32), the application of the municipality to the board of chosen freeholders for an im-provement to be made under this section and the agreement be-tween the municipality and the county as to the portion of the cost of the improvement to be borne by the municipality, are conditions which must be performed prior to action by the board of chosen freeholders awarding contracts for the improvements and the creation of an issue of bonds to pay for the same.

2. A resolution of a board of chosen freeholders of a county awarding contracts for the improvements of streets and purporting to create an issue of bonds to finance the cost of the improvements to be made under section 1128 of the County Home Rule act (*Pamph. L.* 1918, *p.* 596, as amended by *Pamph. L.* 1920, *p.* 72), which does not authorize an appropriation sufficient to meet the cost of carrying out the provisions of the contracts, is invalid under section 14 (*j*) of chapter 252 of *Pamph. L.* 1916, as amended by chapter 240 of *Pamph. L.* 1917, and will be set aside.

3. A resolution purporting to create an issue of bonds to finance the cost of improvements to be made under section 1128 of the County Home Rule act, which does not conform to sections 2 and 12 of the act known as the Pierson Bond act (*Pamph. L.* 1916, *p.* 525, as amended by *Pamph. L.* 1917. *p.* 803), is invalid and will be set aside.

On appeal from the Supreme Court.

For the respondent, *Arthur T. Vanderbilt.*

For the appellants, Northern Construction Company and others, *Riker & Riker.*

For the appellant Osborne & Marsellis Company, *Philip Goodell.*

The opinion of the court was delivered by

KATZENBACH, J.  The above are two appeals from judgments of the Supreme Court setting aside three resolutions of the board of chosen freeholders of the county of Essex (hereinafter referred to as the board), brought before the Supreme Court for review by *certiorari.*  The appellants are contractors for street paving to whom were awarded under the resolutions referred to contracts for the improvement of certain avenues and streets.  The first of the three resolutions, known as resolution No. 4293, was passed by the board on September 9th, 1920, and awarded contracts for the improvement of eight streets in various municipalities in Essex county to three contracting companies.  After awarding the contracts and providing for the furnishing of bonds by the contractors, the execution of cost sharing agree-

ments by the municipalities and the approval by counsel of the bonds and contracts, the resolution reads: "*Resolved,* That the sum of five hundred and forty-two thousand dollars be and the same is hereby appropriated for the purpose of meeting Essex county's share or proportion of the cost of said improvement, to be paid out of the issuance and sale of an issue of bonds of the county of Essex in accordance with the statute." The estimated cost of the eight contracts as given in the resolution is $648,455. The second resolution, known as No. 4317, passed September 23d, 1920, awarded contracts for the improvement of certain streets at an estimated cost of $239,037, and contained a similar provision to resolution No. 4293, for appropriating $140,000 for Essex county's share of the cost of the improvements. The third resolution, known as No. 4346, passed October 28th, 1920, awarded a contract for the improvement of Chancellor avenue, in the city of Newark, at an estimated cost of $125,700, and contained a similar provision to the other two resolutions for appropriating $72,222 for Essex county's share of the cost of the improvement.

The only warrant or authority for the action taken by the board in these resolutions is derived from section 1128 of the act known as the County Home Rule act. *Pamph. L.* 1918, *p.* 596, as amended by *Pamph. L.* 1920, *p.* 72. This section provides that "every board * * * may, by resolution, direct that any public road * * * be improved * * * provided, however, the governing body of the municipality * * * shall make application to the said board for an improvement to be made under this section, and shall undertake, as a condition of the improvement, that the municipality will pay such portion of the cost of the improvement as may be agreed upon * * *."

The prosecutor below contends that the resolutions passed by the board are invalid for the reasons that the municipalities in which the streets are located made no application to the board for improvement thereof and had not agreed prior to the passage of the resolutions with the county as a condi-

tion of the improvement upon the portion of the cost to be paid by the municipalities. We think this position well taken. Under resolutions Nos. 4293 and 4317 the streets to be improved were municipal, not county, thoroughfares. The first step to be taken to secure under this act the improvement of a street is an application to the board by the municipality in which the street is located. Without such application the board would have no right to enter into a contract for its improvement, as the street is under municipal control and the work of improvement could not be conducted without the consent of the municipality.

The second condition mentioned in the statute, namely, the agreement on the part of the municipality to pay such portion of the cost as may be agreed upon between the board and the municipality is also, in our opinion, a condition precedent. The amount which a municipality may be willing to pay towards the cost of the improvement should be an important factor in the determination by the board of the question as to whether or not the improvement should be made. Without this information, a board cannot decide intelligently the question of improvement. The appellants argue that even if the application and agreement be considered conditions precedent, that the failure to have made the application and agreement is cured by the making of the cost sharing agreement before the institution of the work as provided for in the resolution. This contention is unsound, because it would leave, if no prior agreement as to cost, the matter of the portion to be paid by the municipality entirely with the municipality, which is clearly not the intention of the statute. The statute intends that the improvement shall be made only upon the application of the municipality and a satisfactory agreement between the county and municipality as to the cost of the improvement before the county, through the board, commits itself to the award and making of a contract for the improvement. The cases cited by the appellants do not, upon examination, sustain their contention upon this point, or their position that the requirement of application is

directory and not mandatory. The streets mentioned in resolutions 4293 and 4317 were municipal thoroughfares. Applications for the improvement of all the streets mentioned in the resolutions had not been made and no cost sharing agreements entered into prior to the passage of the resolutions. Chancellor street, referred to in resolution No. 4346, was a county road, so no application was necessary for this highway.

Another ground urged by the prosecutor for setting aside these resolutions is that the board did not, before awarding the said contracts, appropriate sums sufficient to meet the cost of the contracts.

In 1916 there was enacted a law (*Pamph. L.* 1916, *p.* 525, amended by *Pamph. L.* 1917, *p.* 803), regulating the issue of bonds and other obligations by municipalities governed by an improvement commission, known as the "Pierson Bond act." In 1917 there was also enacted a law concerning municipal and county finances (*Pamph. L.* 1917, *p.* 548, amended by *Pamph. L.* 1918, *p.* 912), providing for the expenditure of money by a county through appropriations in the annual budget, and also for emergency bonds and notes known as the "Pierson Budget act." Both these acts are general in their scope. They were designed to secure greater uniformity in municipal financing, to give the public a better understanding of the financial condition of municipalities in which they are interested, and to place at the disposal of the governing bodies the data necessary for intelligent action on financial matters. The purpose of the acts is to safeguard public interests, and their provisions should be liberally construed.

For financing the contracts awarded by the resolutions under consideration the board had made no provision in any annual budget. The contracts could not be financed under the emergency features contained in the twenty-fifth section of the Budget act. The contracts, therefore, could only be financed under the Bond act and according to the terms thereof. The provisions contained in the resolutions for financing these contracts has been heretofore quoted. Section 14 (*j*) of the Bond act provides:

"No municipality shall enter into any contract whatsoever, the cost of which is to be financed by the issuance of bonds or notes under this act, unless prior thereto there shall have been regularly adopted by the governing body of such municipality, an ordinance or resolution, as the case may be, authorizing an appropriation sufficient to meet the cost of carrying out the provisions of such contract."

The estimated cost of the contract work under resolution No. 4293 was $648,455. The resolution provides for an appropriation of $542,000, to be paid out of a bond issue. This is insufficient to pay the cost of the improvements, and, therefore, a violation of the provisions of the act. The county makes the contract and becomes obligated thereunder. The purpose of the act was to make it impossible for a municipality to make a contract for an improvement of the nature referred to in the act without first having taken steps to appropriate the full amount required for the purpose of meeting its obligations under the contract. No agreements having been made with the municipalities for sharing of the cost prior to the passage of the resolution, it was incumbent upon the county to authorize an appropriation sufficient to meet the cost of carrying out the provisions of the contracts. Not only is this the express provision of the statute, but the necessity of the rule has been recognized in decisions prior to the adoption of the act. *Hurley* v. *Trenton,* 66 *N. J. L.* 538.

The other two resolutions also fail to authorize appropriations sufficient to meet the cost of carrying out the provisions of the contracts awarded. We are of the opinion that all three of the resolutions under review are invalid because they award contracts without legally providing sufficient funds to pay for the improvements contracted for.

The prosecutor also urges as a further ground for the invalidity of the resolutions that the board failed to follow in that portion of the resolutions providing for bond issues the provisions of the Bond act contained in sections 2 and 12. Section 2 provides that the resolutions authorizing the issue of bonds shall state the purpose or purposes for which the

money raised is to be applied, and the amount of money necessary to be raised, the rate of interest, the date, the maturities and denominations of the bonds, the probable period of the usefulness of the improvement, &c. Section 12 provides for a supplemental debt statement setting forth the net debt of the municipality, the amounts and purposes separately itemized of the bonds or notes to be authorized, the net debt of the municipality after the indebtedness to be authorized has been incurred, the three next preceding assessed valuations of taxable real property (including improvements of the municipality and the average thereof), and the percentage the net debt bears to the average of the assessed valuations. There was no supplemental debt statement filed. The resolutions of the board authorizing the bond issues do not contain the provisions of section 2 above mentioned. We consider compliance with these requirements necessary to legalize the bond issues purporting to be authorized by the resolutions under consideration. In the absence of compliance with these provisions we deem the resolutions invalid.

The prosecutor below urges other grounds for holding the resolutions void, but as we are of the opinion that upon one or all the grounds already considered the three resolutions are invalid, it is unnecessary to consider the further grounds of invalidity presented.

The judgments of the Supreme Court setting aside the resolutions are affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BERGEN, MINTURN, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 10.

*For reversal*—None.