CITY OF CAMDEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENT, v. BARRY SKOKOWSKI, DIRECTOR, DIVISION OF LOCAL GOVERNMENT SERVICES, NEW JERSEY DEPARTMENT OF COMMUNITY AFFAIRS AND THE LOCAL FINANCE BOARD, APPELLANTS.

Argued November 16, 1981—Decided February 3, 1982.

Daniel P. Reynolds, Deputy Attorney General, argued the cause for appellants (James R. Zazzali, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel).

Laurence E. Rosoff, City Attorney, argued the cause for respondent.

The opinion of the Court was delivered by

SCHREIBER, J.

The problem here, as in Passaic v. Local Finance Board, 88 N.J. 293 (1982), decided this day, involves the propriety of an emergency appropriation by a municipality under N.J.S.A. 40A:4–46.

Camden is one of the older urban areas in the State and is afflicted with the ills typical of these centers. Its unemployment rate generally averages two or three times the national rate; approximately 20% of the population consists of senior citizens; it has one of the highest uncollectible tax rates in the State; more than 13% of the houses are owned by the City; the residential tax base is small and consists of very modest homes, and industrial and commercial values have steadily shrunk over the last three decades. In this milieu, it was quite natural for the Camden City Council to harbor an overwhelming desire to maintain the tax level when the 1980 budget calling for a tax increase was presented by the Mayor. It feared that increased taxes would lead to the loss of more small businesses and add to the number of homeowners who could not pay additional taxes and who would forfeit ownership. The Council asserts it made a "sincere attempt" to trim each and every line item down to its

barest minimum "with the hope that there would be financial survival in the City through the year 1980."

The Council proposed numerous changes to effect economies. Thus, it decided to eliminate street lighting in a major redevelopment area where rows of houses had been torn down; it consolidated the purchasing of all office supplies and bulk goods; it considered contracting out the ambulance service, and it proposed a consolidation program in the Fire Department. Despite objections by the Chief of Police, the Chief of the Fire Department and the Director of Public Utilities, the Council substantially cut their budget requests. The budget adopted by a 4–2 vote did not call for a tax increase.

It became apparent that the City had seriously miscalculated its ability to function under the budget as adopted. The Council adopted resolutions authorizing appropriations aggregating $1,167,250 or 3% of the total operating budget for the year 1980. On November 6, 1980, the Council adopted a further resolution authorizing an appropriation of $1,660,186 subject to the approval of the Director of the Division of Local Government Services. The City Council, utilizing actual expenditures through October 31, 1980, calculated its need for these funds to carry on through December 31, 1980. The projected deficit included $197,000 in the Fire Department, $231,000 in the Division of Police, $107,000 in Street Lighting, $114,000 for insurance premiums, $242,000 in Purchasing, $245,000 in the Water Utility account, $142,680 for interest on notes and $110,000 for Social Security. The critical nature of the need was exemplified by the City's inability to pay wages for police after December 9 or for firemen after December 12, to pay any claims under its self-insurance program after October 1, and to pay for electricity for street lighting for November.

The Director and the Local Finance Board refused to approve the City's request, relying upon the Attorney General's opinion

that the circumstances creating the emergency had to be unforeseen at the time the budget was adopted. Formal Opinion No. 10–1980, as modified by Formal Opinion No. 26–1980. The Local Finance Board found that the City had "demonstrated the existence of an emergency insofar as there is a pressing need for the expenditure of public funds to continue the delivery of essential municipal services." It concluded that the emergency was not "due to sudden and unexpected events which occurred subsequent to the adoption of the 1980 budget." The Appellate Division reversed and remanded with directions to approve the emergency appropriation subject to approval of the method of financing by the Local Finance Board.

We affirm essentially for the reasons stated in *Passaic v. Local Finance Board*, 88 *N.J.* 293 (1982). We hasten to add that a local governing unit must examine budget requests realistically. When a municipality's tax base is being eroded, necessary reductions in expenditures may have to be coupled with increases in taxes. The failure to reduce expenses or to raise taxes, or to do both, that results in a clearly foreseeable, obvious and egregious underappropriation can rarely, if ever, be considered a good faith exercise of municipal budgetary authority. In view of the unsettled state of the law and the absence of a full record on the factors of bad faith or irresponsibility, and in view of the corrective measures now being implemented to avoid a repetition of this situation, we refrain from determining that the appropriation in question violated the statutory strictures governing emergency action.

Affirmed.

*For affirmance*—Chief Justice WILENTZ and Justice PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*For reversal*—none.