CITY OF PASSAIC, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENT, v. THE LOCAL FINANCE BOARD OF THE DEPARTMENT OF COMMUNITY AFFAIRS OF THE STATE OF NEW JERSEY, APPELLANT.

Argued November 16, 1981—Decided February 3, 1982.

*Daniel P. Reynolds,* Deputy Attorney General, argued the cause for appellant (*James R. Zazzali,* Attorney General of New Jersey, attorney; *Erminie L. Conley,* Assistant Attorney General, of counsel).

*John J. McKniff*, City Counsel, argued the cause for respondent (*Joseph A. Pojanowski, III*, City Attorney, attorney).

The opinion of the Court was delivered by

SCHREIBER, J.

This case, like the companion case of *Camden v. Skokowski*, 88 *N.J.* 304 (1982), also decided today, involves the refusals of the Director of the Division of Local Government Services, and the Local Finance Board to approve the City of Passaic's request for an emergency appropriation pursuant to *N.J.S.A.* 40A:4–46.

When the City of Passaic prepared its budget for the calendar year 1980, it had not resolved labor costs for municipal employees who were represented by five different bargaining units. These were the Patrolmen's Benevolent Association (PBA), the Firemen's Mutual Benevolent Association (FMBA), the Fire Officers Association (representing supervisors of the fire department), Teamster's Union No. 866 (representing the City's blue collar employees), and the Passaic City Employees Civil Service Association (representing the City's white collar employees). The City compiled its 1980 budget within the perimeter of the Cap Law, *N.J.S.A.* 40A:4–45.1 et seq., so that in general its 1980 expenditures would not exceed its 1979 expenditures by more than 5%. Within that framework the City set aside $80,967 for salary increases for the municipal employees in question.

The City and the Patrolmen's Benevolent Association (PBA) had commenced negotiations on August 8, 1979, which ultimately led to binding arbitration. Negotiations between the City and the Firemen's Mutual Benevolent Association also resulted in binding arbitration.

The arbitration awards for the police and firemen were made on June 4, 1980 and July 18, 1980, long after the 1980 municipal budget had been completed. These awards substantially exceeded the $80,967 reserve. Moreover, these awards established the pattern of increases for the municipal employees covered by the other bargaining units. The City signed contracts with all five bargaining units in September and October 1980. The effective

dates of the increases ranged between February 15, 1980 and March 15, 1980.

The aggregate salary increases caused a 1980 budget shortfall of $505,400. The City had previously adopted an emergency appropriation of $60,000 for general municipal purposes—$20,-000 for Headstart Grant Program, $15,000 for Summer Youth Employment Program and $25,000 for Public Assistance State Aid Agreement. The total amount, $565,400, exceeded the 3% limit in *N.J.S.A.* 40A:4–49, which requires that the Director of the Division of Local Government Services (Director) must approve appropriations that exceed 3% of the total current and utility operating appropriations in the budget for the year. The City, having passed the necessary resolution in November 1980, sought the Director's approval pursuant to *N.J.S.A.* 40A:4–49. The Director, relying on an Attorney General's opinion, Formal Opinion No. 10–1980, as modified by Formal Opinion No. 26–1980, rejected the City's request and the City appealed to the Local Finance Board as authorized by *N.J.S.A.* 52:27BB–10(4).

The Board held a hearing and by a four-to-two vote refused to reverse the Director's decision. The Board acknowledged that the proposed expenditures "may be necessary for the protection of the health, safety and general welfare of the citizens of Passaic," but disapproved the expenditure because the City had failed to demonstrate that the proposed appropriations were due to sudden, unanticipated or unexpected events that occurred subsequent to the adoption of the City's 1980 budget. The City appealed. The Appellate Division ordered the Director to approve the City's emergency appropriation request, subject to the Director's approval of the method of financing. It also ordered the City to prepare and submit to the Director a plan for balancing projected expenses and revenues for 1981. We granted the Director's petition for certification. 87 *N.J.* 379 (1981).

I

The statutory structure for budget making requires that for each fiscal year the municipal governing body adopt a budget

"on a cash basis unless otherwise permitted by law." *N.J.S.A.* 40A:4–3. The budget must be introduced and approved at a first reading before the governing body not later than February 10. *N.J.S.A.* 40A: 4–5. Thereafter, the budget must be advertised, *N.J.S.A.* 40A:4–6, and a public hearing held not less than 28 days after the initial approval, *N.J.S.A.* 40A:4–7. The governing body may then adopt the budget, *N.J.S.A.* 40A:4–8, provided the Director has previously certified his approval. *N.J.S.A.* 40A:4–10. Budgets are to be adopted not later than March 20, except that the date may be extended to a time within 10 days after the Director has certified his approval. *N.J.S.A.* 40A:4–10. The budget is to be transmitted to the county board of taxation not later than March 31. *N.J.S.A.* 40A:4–11.

The statutory scheme also recognizes that emergency appropriations may be necessary. *N.J.S.A.* 40A:4–46 reads as follows:

> A local unit may make emergency appropriations, after the adoption of a budget, for a purpose which is not foreseen at the time of the adoption thereof, or for which adequate provision was not made therein. Such an appropriation shall be made to meet a pressing need for public expenditure to protect or promote the public health, safety, morals or welfare or to provide temporary housing or public assistance prior to the next succeeding fiscal year.

In response to a request from the Director of the Division of Local Government Services for an interpretation, the Attorney General construed the statute to require that the emergency appropriation be for a purpose unforeseen at the time the budget was adopted *and* for a purpose for which adequate provision had not been made. Formal Opinion No. 10–1980. Thus, the "or" in the statute was read in the conjunctive. Only "sudden, unanticipated and unforeseen" circumstances could be deemed emergent.

Approximately seven months later the Attorney General upon reconsideration modified his opinion by interpreting the word "or" in the statute to be in the disjunctive. Formal Opinion No. 26–1980. However, this modification had no effect upon his overall opinion because both of the disjunctive clauses had to fall within the general category of "emergency appropriations,"

namely, those arising out of "sudden, unexpected or unanticipated circumstances." Formal Opinion No. 26–1980, *supra.*

 We believe this interpretation is too narrow. An emergency may arise that is not necessarily unexpected or unanticipated. To read the statute as the Attorney General suggests makes it unnecessary to have included the provision that the appropriation be "for a purpose which is not foreseen at the time of the adoption [of the budget]." If the situation were sudden, unexpected or unanticipated, it would obviously not have been foreseen. Such a construction should not be favored. "It is a cardinal rule of statutory construction that full effect should be given, if possible, to every word of a statute. We cannot assume that the Legislature used meaningless language." *Gabin v. Skyline Cabana Club,* 54 *N.J.* 550, 555 (1969). *Accord, Hoffman v. Hock,* 8 *N.J.* 397, 406–07 (1952); 2A Sutherland, *Statutory Construction* § 46.06 at 63 (4th ed. 1973).

An emergency may arise because adequate provision was not made in the budget, even though the purpose for which the funds are needed was foreseeable when the budget was adopted. Circumstances may lead to conditions creating exigencies that call for immediate action. As Justice Pashman recently wrote in *Worthington v. Fauver,* 88 *N.J.* 183, 195 (1982), "A crisis can arise because of a failure to take action. Thus it is not a necessary component of an 'emergency' that it be sudden or unforeseen." This construction is in harmony with other statutory provisions for emergency appropriations under foreseeable conditions, such as the authority to expend funds to revise and codify ordinances, *N.J.S.A.* 40A:4–53(c), or to prepare an approved tax map. *N.J.S.A.* 40A:4–53(a).

Legislative history supports the view that the Legislature did not intend that "emergency" be construed narrowly as the Attorney General suggests. The original local budget law permitted emergency appropriations in specific circumstances, such

as fire, flood, explosion and epidemic. *L.*1917, *c.* 192, § 25.[1] That statute did not contain a provision conditioned on a lack of "adequate provision" in the budget. Rather, an emergency was described as "equivalent to a public calamity, resulting from fire, flood or like disaster, or by some unusual occurrence that could not by any provision of the local appropriating body be reasonably anticipated." *Lyons v. Bayonne,* 101 *N.J.L.* 455, 457–58 (Sup.Ct.1925).

When the statute was revised in 1936, the Legislature replaced the enumerated causes with language substantially the same as that in the present statute. Compare *L.*1936, *c.* 211, § 303 with *N.J.S.A.* 40A:4–46. The comprehensive nature of the amendment supports the view that the Legislature intended to broaden the bases warranting emergency appropriations to include more than unanticipated or unforeseen events.

This position accords with the approach taken by this Court in *In re: Salaries for Probation Officers of Bergen County,* 58 *N.J.* 422 (1971). There the Bergen County Board of Freeholders objected to an order compelling the Board of Freeholders to furnish funds necessary to pay for salaries of probation officers, contending, among other things, that to expend the funds absent an appropriation would violate the Local Budget Law. Despite the fact that the Board of Freeholders had been aware

---

[1]The pertinent sentence in § 25 reads as follows:

Upon the happening of any emergency caused by fire, flood, explosion, storm, epidemic, recovery of judgment, act of God or the public enemy, or for the preservation of order or public health, or for restoring to a condition of usefulness any public property, the usefulness of which has been destroyed by accident, or by happening that could not have been anticipated, any municipality or county being without funds to meet the necessities and the conditions created thereby, may, by a vote of at least two-thirds of the members of the governing body of such municipality or county, make appropriations therefor and fund the expenditures made thereunder by the issue of "Emergency Notes" or "Emergency Bonds" which shall bear upon their face a statement of the cause or event with. reference to which they are issued, and the date or period thereof.

of the negotiations, it had made no provision in the budget for these possible expenditures. The Court, noting that the regular budget was inadequate, ruled that "the matter can readily be handled by the adoption of an emergency appropriation pursuant to *N.J.S.A.* 40A:4–46. . . ." 58 *N.J.* at 427. Thus, an emergency appropriation was deemed appropriate despite the fact that the expenditure was reasonably foreseeable.

In general, the propriety of any emergency appropriation depends upon whether the failure to make adequate provision in the budget occurred despite a bona fide effort to include whatever items should reasonably have been inserted in the budget in reasonable amounts.[2] When such a failure ensues, an emergency may arise that justifies an appropriation for the particular item or items either because the purpose was not foreseen or because adequate provision was not made.

What would constitute a bona fide effort must be viewed in the light of the statutory provisions that are binding upon municipalities and of which they are or should be aware. Budgets must be prepared on "a cash basis." *N.J.S.A.* 40A:4–3. This requires that there "be sufficient cash collected to meet all debt service requirements, necessary operations of the local unit for the fiscal year and, in addition, provide for any mandatory payments required to be met during the fiscal year." *N.J.S.A.* 40A:4–2. Moreover, no monies may be expended on items not contained in the budget and the amount expended may not exceed the budget appropriation. *N.J.S.A.* 40A:4–57 prohibits, with some few exceptions, expenditure for any purpose for "which no appropriation is provided, or in excess of the amount

---

[2]Although it is conceivable that, even when there has been a failure to exercise good faith in preparing a budget, an unanticipated event might occur as to which an emergency expenditure would be appropriate, in the usual case construction of a reasonable budget and foreseeability of the need for expenditures will be closely related.

appropriated for such purpose." The Appellate Division observed in *State v. Boncelet*, 107 *N.J.Super.* 444, 450 (1969):

> The basic idea behind [the statute] is that the municipality shall make ends meet within its fiscal year; hence, budget expenditures during a fiscal year should not depart from the budget of that year.

Municipal financing is formulated on a pay-as-you-go principle. To permit the unbridled use of supplemental emergency funding subverts that tenet and could effectively constitute deficit financing. Such funding would evade the Local Government Cap Law, *N.J.S.A.* 40A:4–45.1 *et seq.*, limiting the amount by which the budget may be increased annually.

The procedures for adoption of the budget require, among other things, a public hearing following advertisement so as to inform the public of the financial condition and affairs of the municipality as well as to enable the governing body to receive input from the public. Justice Trenchard remarked in *Mackey v. Mayor and Council of Belvidere*, 101 *N.J.L.* 250, 252 (Sup.Ct. 1925), that the purpose of the Budget Law was

> to give members of the public a better understanding of the financial condition and affairs of municipalities in which they are interested, and to place at the disposal of the governing bodies the data necessary for intelligent action on financial matters, and thereby safeguard the public interests.

*Accord, Chamber of Commerce v. Essex County,* 96 *N.J.L.* 238, 242 (E. & A. 1921); *Kotlikoff v. Tp. of Pennsauken*, 131 *N.J.Super.* 590, 595 (Law Div.1974). The prophylactic effect of these public hearings is largely lost when the annual balanced budget presented to the public is a mere pretense.

A municipality raises its operating funds from the taxes paid by the local property owners. Tax bills are prepared on the basis of the size of the adopted budget. *N.J.S.A.* 40A:4–17. *N.J.S.A.* 40A:4–47 mandates that all emergency appropriations shall be provided in full in the budget of the next succeeding fiscal year and *N.J.S.A.* 40A:4–51 provides that the governing body may issue emergency notes that mature no later than the last day of the next succeeding fiscal year. Thus, arbitrary use

of emergency appropriations might saddle future taxpayers with expenses properly allocable to a prior year.

All these budgetary provisions seek to ensure that a municipality will realistically forecast its annual expenditures. A major purpose of the budget is to determine the amount of money that must be raised to conduct the affairs of the municipality in the fiscal year. This will enable the business of the municipality to be conducted on a balanced budget, on sound business principles and in large part on the same basis that a successful private business is conducted. 15 McQuillin, *Municipal Corporations*, § 39.39 at 121 (3d ed. 1970).

## II

The Director of the Division of Local Government Services and the Local Finance Board adhered to the Attorney General's interpretation of *N.J.S.A.* 40A:4–46. Thus they did not dispute the need for expenditures in terms of the public welfare of the citizens of Passaic. Nor did they question the bona fide effort of the City in fashioning the budget. This is not to say that a conclusion of lack of good faith could not have been made. At the time the 1980 budget was being formulated, negotiations involving wage rates for a substantial number of municipal employees had not been resolved. The importance of that factor could not be underestimated. Wages accounted for approximately $8,000,000 out of a total of $12,200,000 of 1980 expenditures that were subject to the 5% limitation under the Cap Law. Reserving $80,000 or 1% for salary increases was most optimistic, particularly when the municipality was faced with two compulsory arbitration proceedings.[3]

---

[3] A governmental body is placed in a dilemma when it determines prospective wages. Exposure of the amount of the wage increase in its proposed budget conceivably would weaken its bargaining position with the unions. This problem is one that may appropriately be considered and resolved by the Legislature.

However, under all the circumstances, we choose not to disturb the judgment of the Appellate Division. These circumstances include the misconception of the Director of Local Government Services and the Local Finance Board, the effectuation of the Appellate Division judgment, involving the emergency appropriation and financing, and presumably the financing of the funds in the 1981 budget. Little purpose would be served now by remanding to determine whether these expenditures, which cannot be undone, were proper. Our approval of this emergency appropriation should not be considered as countenancing dilatory or other tactics creating stressful situations that arise out of gross underappropriations. In the future, municipalities will be on notice as to the scope of their emergency powers and may well have to make a stronger showing than Passaic did in this case that a 1% increase in salary allocations constituted a good faith effort to appropriate sufficient funds in the annual budget. Unless the need is unforeseen at budget making time or the need arises despite a bona fide effort to structure a reasonable budget, relief through an emergency appropriation will not be available. This may lead to some hardship on the local scene or perhaps, as the Attorney General has suggested, to supervision of a municipality's fiscal affairs by the Director of the Division of Local Government Services and the Local Finance Board. *N.J.S.A.* 52:27BB–54, *et seq.; N.J.S.A.* 52:27BB–69; *N.J.S.A.* 52:27BB–89.

Affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*For reversal*—None.