387 S.E.2d 524

## RANDOLPH COUNTY BOARD OF EDUCATION

v.

## Bonnie SCALIA, Harry L. Vannoy, John P. Horne, John J. Rector, and Ben L. Johnson, Jr.

### No. 18743.

Supreme Court of Appeals of West Virginia.

Decided Nov. 21, 1989.

---

William B. McGinley, Charleston, for Bonnie Scalia, Harry L. Vannoy, John P. Horn, John J. Rector, and Ben L. Johnson.

David Hart, Elkins, for Randolph County Bd. of Educ.

MILLER, Justice:

This appeal is brought by four guidance counselors and one librarian, all full-time

employees of the Randolph County Board of Education. The appellants assert that the Circuit Court of Randolph County erred in reversing the hearing examiner's decision made pursuant to the West Virginia Educational Employees Grievance Board's procedures outlined in W.Va.Code, 18–29–1, et seq. (1985).[1] Specifically, the appellants contend that the lower court should not have reversed the hearing examiner's decision under the standards of review contained in W.Va.Code, 18–29–7. In particular, the appellants argue that the hearing examiner's key findings were amply supported by the facts and that they were not clearly wrong.

On May 20, 1985, the appellants filed a grievance pursuant to the procedures established in W.Va.Code, 18–29–1, et seq., contesting the Board of Education's continual practice of requiring the appellants to substitute for absent classroom teachers. The appellants complained that this practice was unwarranted, that they were prevented from performing their jobs, and that they were not certified to teach in the academic areas to which they had been assigned.

The Board of Education sought to justify the assignments as an "emergency" measure under W.Va.Code, 18–4–10(10). This provision authorizes a county superintendent to "[a]ct in case of emergency as the best interests of the school demand." The Board maintained that by the time of the assignments in May, 1985, it had spent all of the money budgeted for substitute teachers.

The appellants responded that the "emergency" was not unforeseen because the Board had, for the previous five years, underfunded its substitute teacher account. Furthermore, the appellants asserted that there was actually a surplus in the Board's budget at the end of the 1985 fiscal year. Finally, the appellants argued that W.Va. Code, 18A–4–10, allows a funding deficit for substitute teachers so long as the deficit can be paid out of the next fiscal year's budget.[2]

Judicial review of a hearing examiner's decision under W.Va.Code, 18–29–7,[3] is similar to the standard of judicial review of an administrative decision under the Administrative Procedure Act, W.Va.Code, 29A–5–4(g). We outlined in Syllabus Point 2 of *Shepherdstown Volunteer Fire Dep't v. State ex rel. State Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983), the extent of judicial review under the Administrative Procedure Act:

"Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been

---

1. In 1988, the West Virginia Educational Employees Grievance Board was, by virtue of W.Va.Code, 29–6A–1, et seq. (1988), combined with the newly created State Employees Grievance Board to provide for a unified education and state employees grievance procedure. *See American Fed'n of State, County & Mun. Employees v. Civil Serv. Comm'n*, 181 W.Va. 8, 380 S.E.2d 43 (1989). The judicial review provisions of this statute are found in W.Va.Code, 29–6A–7 (1988), and are substantially similar to those contained in W.Va.Code, 18–29–7 (1985).

2. W.Va.Code, 18A–4–10, provides, in material part: "If funds in any fiscal year, including transfers, are insufficient to pay the full cost of substitutes for meeting the provisions of this section, the remainder shall be paid on or before the thirty-first day of August from the budget of the next fiscal year."

3. W.Va.Code, 18–29–7, provides in applicable part:

"The decision of the hearing examiner shall be final upon the parties and shall be enforceable in circuit court: Provided, That either party may appeal to the circuit court of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' "

Syllabus Point 1, *St. Mary's Hosp. v. State Health Planning & Dev. Agency,* 178 W.Va. 792, 364 S.E.2d 805 (1987); Syllabus Point 3, *Montgomery Gen. Hosp. v. West Virginia Human Rights Comm'n,* 176 W.Va. 580, 346 S.E.2d 557 (1986); Syllabus Point 1, *Johnson v. State Dep't of Motor Vehicles,* 173 W.Va. 565, 318 S.E.2d 616 (1984).

■ Both statutes contain virtually the same criteria for reversal of the factual findings made at the administrative level, i.e., that they are "clearly wrong in view of the reliable, probative and substantial evidence on the record as a whole." We have traditionally expressed this rule in an abbreviated fashion: Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong. *E.g., West Virginia Dep't of Health v. West Virginia Civil Serv. Comm'n,* 178 W.Va. 237, 358 S.E.2d 798 (1987); *West Virginia Dep't of Health v. Mathison,* 171 W.Va. 693, 301 S.E.2d 783 (1983); *Vosberg v. Civil Serv. Comm'n,* 166 W.Va. 488, 275 S.E.2d 640 (1981); *Billings v. Civil Serv. Comm'n,* 154 W.Va. 688, 178 S.E.2d 801 (1971). We therefore conclude that a final order of the hearing examiner for the Educational Employees Grievance Board, made pursuant to W.Va. Code, 18–29–1, *et seq.,* and based upon findings of fact, should not be reversed unless clearly wrong.

■ In the administrative record, there was substantial, reliable, and probative evidence justifying the hearing examiner's decision. In previous years, the budget allocation for substitute teachers had been consistently underestimated. One of the guidance counselors had been used as a substitute teacher for five of the last six school years. In addition, the 1985 fiscal year's line item for substitute teachers was $10,000 less than the preceding year's. The hearing examiner concluded that these facts precluded the Board's claim of an "emergency" under W.Va.Code, 18–4–10(10), which permits a county superintendent of schools to "[a]ct in case of emergency as the best interests of the school demand."

■ In general, the essential elements of an emergency are that the condition be unforeseen or unanticipated and that it call for immediate action. *First Continental Sav. & Loan Ass'n, Inc. v. Director, State Dep't of Assessment & Taxation,* 229 Md. 293, 183 A.2d 347 (1962); *Layne Minnesota Co. v. Town of Stuntz,* 257 N.W.2d 295 (Minn.1977); *Bethlehem Steel Corp. v. Board of Educ. of City School Dist. of Lackawanna,* 91 Misc.2d 258, 397 N.Y.S.2d 882 (1977); *Hatfield v. Meers,* 402 S.W.2d 35 (Mo.App.1966); *Scatuorchio v. Jersey City Incinerator Auth.,* 14 N.J. 72, 100 A.2d 869 (1953); *Board of Educ. v. City of Elizabeth,* 13 N.J. 589, 100 A.2d 745 (1953); *Scaccia v. Borough of Old Forge,* 373 Pa. 161, 94 A.2d 563 (1953); *City of Rock Springs v. Police Protection Ass'n,* 610 P.2d 975 (Wyo.1980). *See generally* 29A C.J.S. *Emergency* pp. 141–42 (1965 & Supp. 1989).

Notwithstanding this general rule, we agree with the New Jersey Supreme Court's holding in *City of Passaic v. Local Fin. Bd. of the Dep't of Community Affairs,* 88 N.J. 293, 441 A.2d 736 (1982), that a fiscal emergency can occur even though an expense has been anticipated and placed in the budget. In *Passaic,* the city was involved in collective bargaining negotiations with its employees and had to estimate labor costs. The city placed approximately $81,000 in the budget to cover anticipated wage increases. The negotiations ultimately ended in binding arbitration, and the aggregate salary increases were ap-

proximately $505,000. The Court made these observations:

"An emergency may arise because adequate provision was not made in the budget, even though the purpose for which the funds are needed was foreseeable when the budget was adopted. Circumstances may lead to conditions creating exigencies that call for immediate action....

\* \* \* \* \* \*

"In general, the propriety of any emergency appropriation depends upon whether the failure to make adequate provision in the budget occurred despite a bona fide effort to include whatever items should reasonably have been inserted in the budget in reasonable amounts." 88 N.J. at 298, 300, 441 A.2d at 738, 739. (Footnote omitted).

*E.g., Camden v. Skokowski,* 88 N.J. 304, 441 A.2d 741 (1982). *Cf. Worthington v. Fauver,* 88 N.J. 183, 440 A.2d 1128 (1982).

■ Thus, a fiscal emergency may arise because adequate provision was not made in a budget, even though the purpose for which the funds are needed was foreseeable when the budget was adopted. In such a case, before an emergency can be found, it must be shown that the amount placed in the budget was reasonable in light of all of the attendant circumstances, including prior budgetary experience.

■ In view of the preceding years' experience, it does not appear that there was a reasonable effort by the Board to adequately provide for the substitute teacher expense. Nor was there any showing by the Board that it was in such financial straits that it was forced to utilize the budget reduction provisions of W.Va.Code, 18–9B–8. This provision justifies fixing line items of a budget at a diminished level from the preceding fiscal year. *See Sum-*

*mers County Educ. Ass'n v. Summers County Bd. of Educ.,* 179 W.Va. 107, 365 S.E.2d 387 (1987).

## II.

■ Aside from the central emergency issue, the record supports the hearing examiner's conclusion that there was no fiscal crisis. The circuit court rejected the hearing examiner's conclusion and found that a deficit would have existed at the end of the fiscal year. Although W.Va.Code, 11–8–26, permits a 3 percent casual deficit if it can be satisfied in the next year's budget, the circuit court found that the Board's budget deficit could not be alleviated the following year.[4] *See Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975).

This issue is not a legal matter. The question of a whether there was a budget deficit is a factual matter. The Board's finance director was aware that the Board would receive approximately $99,000 in interest on its investments before the end of the 1984–1985 fiscal year. He testified that there was an $80,000 surplus at the end of the 1985 fiscal year and that the Board saved approximately $60,000 by having the appellants work as substitutes.

The hearing examiner reviewed the evidence and concluded that there was no deficit. The uncontradicted evidence was that there was a surplus in the budget at the end of the fiscal year. The examiner's findings should not have been set aside by the trial judge.

Finally, the circuit court found that the hearing examiner's decision conflicted with an opinion issued by the state superintendent of schools that contract employees could be used for other than their specified jobs in the event of an emergency. We assume for purposes of this case that the superintendent's opinion was designed to cover this situation and constituted an offi-

---

4. W.Va.Code, 11–8–26, provides:
  "Except as provided in sections fourteen-b, twenty-five-a and twenty-six-a [§§ 11–8–14b, 11–8–25a and 11–8–26a] of this article, a local fiscal body shall not expend money or incur obligations:
  "(1) In an unauthorized manner;
  "(2) For an unauthorized purpose;
  "(3) In excess of the amount allocated to the fund in the levy order;

"(4) In excess of the funds available for current expenses.
  "Notwithstanding the foregoing and any other provision of law to the contrary, a local fiscal body or its duly authorized officials shall not be penalized for a casual deficit which does not exceed its approved levy estimate by more than three per cent, provided such casual deficit be satisfied in the levy estimate for the succeeding fiscal year."

cial policy.[5] Nonetheless, it does not warrant reversal of the hearing examiner's ruling. There was no fiscal emergency, which is the predicate event of the superintendent's opinion. We agree with the hearing examiner's decision that no fiscal emergency existed. We therefore find that the circuit court erred.

From a policy standpoint, the parties' views are not irreconcilable. The appellants assert that they are not "duly certified" teachers as substitutes are required to be under W.Va.Code, 18A–2–3, but agree that if there were a true fiscal emergency, they could be utilized as substitute teachers.[6] Thus, the major disagreement between the parties is not a legal one, but a factual one as to whether there was a fiscal emergency. Applying the standards in *City of Passaic*, we do not believe that the Board made a bona fide effort to include a reasonable amount in its budget for substitute teacher expenses in light of its previous experience with the actual costs incurred. A different result could well be reached if only one fiscal year were involved and if the expenses were truly extraordinary when compared to those paid in prior fiscal years.

For the foregoing reasons, the judgment of the circuit court is reversed, and the final order of the hearing examiner is reinstated.

Reversed.

---

**5.** This document is identified as Exhibit 14 and is dated May 23, 1984. It is signed by Roy Truby, then state superintendent of schools. The addressee has been blacked out on the exhibit. The document begins: "You have written that you were told by personnel memorandum (December 15, 1983) that...." It is impossible to determine if this document was designed to be a general policy statement. It appears Dr. Truby was answering specific questions, since the document contains this sentence: "Following are your questions in regard to the aforementioned personnel memorandum and my answers to each." There are no detailed facts set out in the May 23, 1984 document. The applicable text of the superintendent's response is as follows:

"You have asked: '1. Can the Board of Education require employees under contract for specific jobs with identified responsibilities to neglect their identified duties to substitute in the classroom?'

"*In an emergency* the answer to this question appears to be yes, however in such a situation the employees would not be neglecting their identified duties." (Emphasis added).

**6.** The appellants further agree that Policy No. 5114 of the West Virginia Board of Education permits the use of noncertified teachers as substitutes where properly certified personnel are not available. In this case, however, it appears that certified substitute teachers were available.