STATE OF WEST VIRGINIA

**Brenda Wells,**
**Petitioner Below, Petitioner**

**FILED**

**February 11, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs) No. 12-0209** (Kanawha County 11-AA-78)

**The Upshur County Board of Education,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Brenda Wells, by counsel Andrew J. Katz, appeals the January 12, 2012 order of the Circuit Court of Kanawha County that affirmed, in part, and reversed, in part, a decision of the West Virginia Public Employees Grievance Board ("Grievance Board"). Respondent Upshur County Board of Education, by counsel Rebecca M. Tinder and Richard S. Boothby, has filed a response, to which petitioner has filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Brenda Wells was the principal of Buckhannon-Upshur High School when she was placed on unpaid suspension for five days as a result of an incident that occurred on May 19, 2009. After challenging this suspension with the West Virginia Public Employees Grievance Board, an administrative law judge reduced petitioner's unpaid suspension from five days to one day. Thereafter, both parties appealed to the circuit court, which reversed the Grievance Board's decision and reinstated petitioner's original five-day unpaid suspension. On appeal, petitioner alleges that the circuit court's review of the Grievance Board's decision was improper and that it was error to reverse the decision. In support, she alleges that the circuit court virtually ignored the administrative law judge's decision on the issue of mitigation and that the Grievance Board's decision cannot be clearly wrong because the record contains substantial evidence in support of the decision. In response, respondent argues that the reduction in petitioner's suspension was contrary to law, arbitrary and capricious, and exceeded the administrative law judge's authority. According to respondent, the circuit court was correct in reversing the Grievance Board's decision because many important factual findings were clearly wrong and contrary to other findings.

This Court has previously held that "'[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board . . . should not be reversed unless clearly wrong.' Syllabus Point 1, *Randolph County Board of Education v. Scalia*, 182 W.Va. 289, 387

S.E.2d 524 (1989)." Syl. Pt. 3, in part, *Alderman v. Pocahontas Cnty. Bd. of Educ.*, 223 W.Va. 431, 675 S.E.2d 907 (2009) (internal citations omitted). Upon our review, the Court concludes that the circuit court did not improperly review the board's decision nor did it err in reversing it. Having reviewed the circuit court's " Final Order" entered on January 12, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the circuit court and its January 12, 2012, order affirming, in part, and reversing, in part, the board's decision is affirmed.

Affirmed.

**ISSUED:** February 11, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISQUALIFIED:**

Justice Margaret L. Workman

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

2012 JAN 12 AM 10: 29

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

THE BOARD OF EDUCATION
OF THE COUNTY OF UPSHUR,

        Petitioner,

v.

                               Civil Action No. 11-AA-77
                               Judge Zakaib

BRENDA WELLS,

        Respondent.

BRENDA WELLS,

        Petitioner,

vs.

                                 Civil Action No. 11-AA-78
                               Judge Zakaib

THE UPSHUR COUNTY BOARD OF EDUCATION,

        Respondent.

## FINAL ORDER

These two appeals arose from a decision of the West Virginia Public Employees Grievance Board in the matter of *Brenda Wells v. Upshur County Bd. of Educ.*, Docket No. 2009-1714-UpsED, issued May 6, 2011. Brenda Wells, ("Wells") appealed to the Grievance Board from a decision by the Upshur County Board of Education ("Board") to suspend her from her employment as Principal of Buckhannon-Upshur High School for five days, without pay, for jumping on to a pile of students (known as a "dog pile") on the last day of classes for seniors in the 2008-2009 school year. In the Grievance Board decision, the Administrative Law Judge ("ALJ") found that the Board "demonstrated that [Wells'] behavior was such that she was

properly subject to discipline in accordance with *W. Va. Code* § 18A-2-8." In spite of this conclusion, the ALJ substituted his judgment as it relates to the punishment meted out by the Board by reducing the unpaid suspension from five days, to one work day.

In appealing from this decision in Civil Action No. 11-AA-77, the Board contends that the reduction of grievant's punishment exceeded the hearing examiner's statutory authority; was clearly wrong in view of the evidence; was arbitrary and capricious and characterized by a clearly unwarranted exercise of discretion. In the companion appeal, Civil Action No. 11-AA-78, Wells contends that the ALJ erred in concluding that Wells' behavior warranted any discipline.

## FINDINGS OF FACT

The findings of fact of the ALJ, below, are restated as follows (footnotes omitted):

1. Grievant was employed by Respondent as the principal of Buchannon-Upshur High School at the time of this suspension.

2. Prior to the allegations leading to her suspension, the record established that Grievant did not have any prior discipline involving physical contact with students or participating in an inappropriate student activity.

3. Grievant's stated goal as principal was to improve the culture of the school, the relationship between the students and teachers, and in addition, the relationship between students and the school administration.

2

4. To increase the student spirit and comradery with the administration, Grievant participated in the talent show, increased the number of pep rallies, increased senior activities, and, in general, tried to meet her stated goals.

5. May 19, 2009 was the last of day of class for most seniors at Buchannon-Upshur High School. True for most high schools, the seniors' last day of class has been chaotic due to the difficulty in getting seniors to conform to school rules. Historically, senior students have every year "embraced the opportunity to act out and leave their finger print on the last day of school." Testimony of Assistant Superintendent Roy Pettit, Level Three.

6. Seniors in the past, on their final day of school, have engaged in food fights, taking real estate signs from around town and placing them on school grounds, painting the water tower that is across from the school, painting the word "seniors" across a pool facility, and taking forks from the cafeteria and hiding them around the school.

7. Students are permitted to go into the gym during lunch period, which is next to the commons area, and separated from the commons area by a set of double doors. Students are permitted to go back and forth between the gym and the commons area.

8. Close to the end of the first lunch period on May 19, 2009, a food fight broke out. When this happened Assistant Principal Frashure stepped to the perimeter and took note of who was throwing food. Grievant heard the commotion during the food fight and came out of her office located next to the commons areas. When Grievant had made her way to the cafeteria and commons areas, the food fight had ended.

3

9. Shortly after the food fight, a crowd of students started to gather on the other side of the commons area. Grievant and Mr. Frashure thought that this was also some type of fight and went to investigate.

10. Rather than a fight, this second disruption was a group of five to six male students piling on top of each other. They were surrounded by a crowd of students.

11. Grievant jumped onto one side of the pile of students for no more than a couple of seconds. Her action was caught on a cell phone video recording device by a student and was electronically shared with members of the community. Respondent Exhibit 2.

12. The students laughed at the action of Grievant, the male students broke up the pile, and began separating. Students joked with Grievant about her not being able to get her feet off the floor when she leaned on the pile. In fact, Mr. Frashure appears amused in the video of the incident, along with the surrounding students.

13. Yet another incident followed in which a student climbed on top of a table in the cafeteria and launched off the table onto the overhead arms of a crowd of students standing in the cafeteria.

14. Superintendent Lampinen directed the Facilities and Maintenance Director to immediately go to the high school and secure a copy of the videos from the security camera to review and determine what took place. The dog pile was in an area outside the range of the security camera.

15. On May 20, 2009, Superintendent Lampinen and Assistant Superintendent Pettit met with Grievant to discuss the alleged activities. When asked about the incidents of the

4

previous day, Grievant admitted that there was a dog pile where students were piled on top of one another. Grievant reported that "she walked up to the pile and put her arms to the side and just fell onto the pile.., my feet never left the ground ." Grievant indicated that her participation "was a way to diffuse the situation. She thought it was funny." Testimony of Assistant Superintendent Roy Pettit, Level Three.

16. Respondent found that the actions of Grievant violated safety, role model, and the responsible citizen provisions of the Employee Code of Conduct. Grievant was suspended for five days without pay by Superintendent Lampinen by letter dated June 5, 2009.

Other significant facts include:

17. As a professional educator, Wells is subject to the requirements of both the West Virginia Department of Education Employee Code of Conduct and the Upshur County Employee Code of Conduct. Both of these policies, among other things, obligate the professional educator to maintain a high standard of conduct and exhibit professional behavior at all times.

18. The Superintendent of Upshur County Schools suspended Wells for five days, without pay, for violations of the Employee Code of Conduct and insubordination pursuant to W. Va. Code § 18A-2-8.

19. In the level Three Grievance Decision, the ALJ correctly determined that:

Respondent established by a preponderance of the evidence that Grievant participated in the dog pile incident by attempting to jump on the pile of students. Accordingly, Grievant was insubordinate in that she was aware of her duties under the county and state policy, but failed to comply with them. Respondent

5

demonstrated that Grievant's behavior was such that she was properly subject to discipline in accordance with *W. Va. Code* § 18A-2-8.

20. While correctly determining that Wells was subject to discipline pursuant to *W. Va. Code* § 18A-2-8, the ALJ erroneously substituted his judgment for that of the Board and reduced Wells' suspension from five days, without pay, to one.

## STANDARD OF REVIEW

Review of the Decision is controlled by West Virginia Code § 6C-2-5(b), which provides that a decision by the Grievance Board may be challenged on the grounds that it:

(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;

(2) Exceeds the administrative law judge's statutory authority;

(3) Is the result of fraud or deceit;

(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The Court shall "review the entire record that was before the administrative law judge[.]" *West Virginia Code § 6C-2-5(d).* The West Virginia Supreme Court held that "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board made pursuant to *West Virginia Code* 18-29-1, et seq. (1985)[1], and based upon findings of fact should not be reversed unless clearly wrong." Even if a reviewing court would be inclined to disagree with a finding of fact rendered by an Administrative Law Judge, the "clearly wrong" standard of review precludes a court from substituting its judgment upon the question. *Cahill v.*

---

[1] In 2007, the Legislature rewrote the public employees grievance procedure, incorporating provisions of §§ 18-29-1, et seq. into §§ 6C-2-1, et seq.

*Mercer County Board of Education*, 208 W. Va. 177, 539 S.E.2d 437 (2000). A circuit court shall review de novo the administrative law judge's conclusions of law. *Holmes v. Board of Education of Berkeley County*, 526 S.E.2d 310, 313 (W. Va. 1999).

## DISCUSSION

### I. It Was Neither Arbitrary and Capricious Nor Erroneous to Impose Discipline upon Wells for her Conduct.

Wells failed to make a showing that the findings of fact rendered by the ALJ were "clearly wrong in view of the reliable, probative and substantial evidence on the whole record." *W. Va. Code* § 6C-2-5. Rather, Wells attempts to characterize her behavior of jumping on a pile of male students as merely an effort to diffuse the situation. The video evidence of Wells' behavior speaks for itself. The Employee Code of Conduct set forth in W. Va. Board of Education Policy 5902, 126 C.S.R. 162, *Level Three Respondent Exhibit 5*, as well as the Upshur County Board of Education Employee Code of Conduct, *Level Three Respondent Exhibit 4*, specifically outlines the expectations for behavior of all Board employees, including the principal. Wells was aware of her duties and responsibilities under the applicable rules. The action of intentionally jumping onto the pile of students cannot be seen as anything but a violation of the safety, role model, and responsible citizen provisions of those rules.

Wells had the burden of showing grounds for the reversal or modification of the decision rendered by the ALJ as it relates to the finding that her action of intentionally jumping onto the pile of students constituted insubordination. Wells failed to meet this burden.

The Court's review of the entire record does not support a conclusion that that decision of the Administrative Law Judge as to the actions of Wells amounting to

7

insubordination was contrary to law or that the findings in support thereof were clearly wrong. The Administrative Law Judge provided a rational explanation with detailed findings of facts supporting the factual determinations regarding the misconduct of Wells. The record before the Administrative Law Judge was replete with evidence regarding Wells' actions which resulted in the finding of insubordination. Even had Wells successfully cast doubt upon the testimony, the unrebutted evidence provided by the videotape of the incident, speaks for itself. Additionally, there can be no question that Wells' actions rose to the level of insubordination as envisioned by *W. Va. Code* § 18A-2-8.

Wells' clearly violated the Employee Code of Conduct set forth in W. Va. Board of Education Policy 5902 *supra*, as well as the Upshur County Board of Education Employee Code of Conduct, *supra.* The evidence presented by the Board met the standard set forth in *Butts v. Higher Educ. Interim Governing Bd.*, 212 W. Va. 209, 569 S.E.2d 456 (2002)(*per curiam*) which held:

> that for there to be "insubordination," the following must be present: (a) an employee must refuse to obey an order (or rule or regulation) ; (b) the refusal must be willful ; and (c) the order (or rule or regulation) must be reasonable and valid.

Wells' violation of the Employee Code of Conduct constituted insubordination under *W. Va. Code* § 18A-2-8 for which disciplinary action was appropriate.

**II    The Administrative Law Judge Impermissibly Substituted His Judgment for that of the Board.**

Like the Board, the Administrative Law Judge, below, found that Wells' actions, jumping on a pile of male students in the school cafeteria, violated the Employee Code of Conduct set forth in W. Va. Board of Education Policy 5902, as well as the Upshur County

8

Board of Education Employee Code of Conduct. More importantly, the Administrative Law Judge found that Wells' conduct constituted insubordination under *W. Va. Code* § 18A-2-8. Level Three Decision, p. 7. With respect to the Board of Education's decision to suspend Wells for five days without pay, the Administrative Law Judge found that "[c]onsiderable deference is afforded the employer's assessment of the seriousness of the employee's conduct." *See Level Three Decision* pg. 7 (citations omitted). Despite that "considerable deference" and a large body of Grievance Board case law in support thereof, the Administrative Law Judge reduced the five day suspension of Wells to one day. *See Level Three Decision* pg. 10.

"The Administrative Law Judge's interference with the Board of Education's discretion in this matter was impermissible, and inconsistent with the well-established principle that Boards of Education have 'substantial discretion to determine a penalty in these types of situations' so long as that discretion is not exercised in an arbitrary and capricious manner. <u>See Sides v. Marion County Bd. of Educ.</u>, Docket No. 05-24-362 (February 16, 2006); *Bays v. Fayette County Bd. of Educ.*, Docket No. 05-10-103 (May 24, 2005); <u>Jordan v. Mason County Bd. of Educ.</u>, Docket No. 99-26-8 (July 6, 1999), <u>Tickett v. Cabell County Bd. of Educ.</u>, Docket No. 97-06-233 (Mar. 12, 1998); <u>Huffstutler v. Cabell County Bd. of Educ.</u>, Docket No. 97-06-150 (Oct. 31, 1997)." *Marshall County Bd. of Educ. v. Marl,* Civil Action No. 06-AA-100 (Mar. 8, 2007), p. 6.

The West Virginia Legislature has conferred upon county boards of education exclusive authority to dismiss or suspend school personnel upon the grounds enumerated *W. Va. Code* § 18A-2-8. It is only when a county board of education has acted unreasonably in the exercise of this authority that its disciplinary decisions may be disturbed. *Beverlin v. Bd. of Educ.*, 158 W. Va. 1067, 216 S.E.2d 554 (1975). Wells' conduct constituted insubordination

9

within the meaning of *W. Va. Code* § 18A-2-8. Insubordination "includes, and perhaps requires, a *willful* disobedience of, or refusal to obey, a reasonable and valid role, regulation, or order issued... [by] an administrative superior." *Butts, supra* (emphasis supplied). Wells' conduct was then, by definition, "willful."

There is no West Virginia authority which provides the right for an Administrative Law Judge to supplant the authority of county boards of education in determining the appropriate level of discipline to be imposed where a school employee has in fact committed one or more *W. Va. Code* § 18A-2-8 offenses. The present decision notwithstanding, the Grievance Board has consistently recognized such limits to its authority. *See Marshall County Bd. of Educ. v. Marl, supra, footnote 4.* Given the nature of her position as the principal of the school and the seriousness of the offense, no justification warranted the ALJ substituting his judgment for that of the Board in determining the appropriate discipline for insubordination in violation of *W. Va. Code* § 18-2-8.

Wells' action of jumping on a pile of students was, as the superintendent testified, "[s]hocking, unacceptable, embarrassing, totally inappropriate." *Level Three Transcript at pg. 107.* ~~The Board imposed the five day suspension taking into consideration the position held by~~ Wells, that of the principal of the school, who should be held to a higher standard than both students and teachers; the public nature of her conduct, in front of the students and staff and available on video in the community; the consequences meted out by the Board in other disciplinary cases, none of which included an employee, much less a principal, jumping onto a pile of students; and the nature of the conduct itself. *See Level Three Transcript pp. 105-110.*

10

None of the findings of the Administrative Law Judge merit a decision to impose a lesser punishment and Wells failed in her burden of proving that the punishment was excessive and that mitigation was required.

## CONCLUSIONS OF LAW

1.     An employee of a county board of education may be suspended or dismissed for immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge. W. Va. Code § 18A-2-8.

2.     This Court has previously determined that violations of the Employee Code of Conduct constitute insubordination pursuant to W. Va. Code § 18A-2-8. *See Marshall County Bd. of Educ. v. Marl., Civil Action No. 06-AA-100 (Mar. 8, 2007); Wimmer v. Braxton County Bd. of Educ., Civil Action 08-AA-15 (May 1, 2009); and Hoover v. Wirt County Bd. of Educ., Civil Action 09-AA-54 (Feb. 23, 2010).*

3.     In *Butts v. Higher Educ . Interim Governing Bd.*, 212 W. Va. 209, 569 S..E.2d 456 (2002)(*per curiam*), the W. Va. Supreme Court of Appeals held::

> that for there to be "insubordination," the following must be present: (a) an employee must refuse to obey an order (or rule or regulation) ; (b) the refusal must be wilful ; and (c) the order (or rule or regulation) must be reasonable and valid.

4.     As cited above, the ALJ correctly found that Wells behavior violated the Employee Code of Conduct policies of the West Virginia Board of Education and the Board. These policies are "reasonable and valid."

11

5.     "The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syllabus Point 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

6.     The Board's imposition of a five day suspension, without pay, was supported by the substantial evidence educed at the Level Three Hearing and recited by the ALJ in the Level Three decision. Given the charges proven against the grievant, the penalty is not disproportionate or excessive, nor is the penalty arbitrary and capricious.

## DECISION

For the reasons set forth above, this Court **ORDERS** that the Decision of the West Virginia Public Employees Grievance Board, dated May 6, 2011, is hereby **AFFIRMED IN PART** and **REVERSED IN PART**. This Court affirms the judgment of the Administrative Law Judge that Wells was rightfully suspended for insubordination pursuant to W. Va. Code § 18A-2-8. This Court reverses the Administrative Law Judge's reduction of Wells' suspension to one day and restores the five day suspension, without pay, imposed by the Board. The Court further **ORDERS** that this action be **DISMISSED**, with prejudice, and removed from the docket of this Court. The objections of the parties to this Order are hereby noted and preserved. It is further ORDERED that the Clerk of this Court send a certified copy of this Order to all counsel of record and to the West Virginia Public Employees Grievance Board at the address of 1596 Kanawha Boulevard, East, Charleston, West Virginia 25311-2413.

12

ENTERED this _11th_ day of _January_, 2012 PZA

The Honorable Paul Zakaib, Jr.

RECORDED

1-12-12

Date:
Certified copies sent to: P. TINDER
counsel of record
parties PUBLIC EMP GRIEVANCE BOARD
other BRENDA WELLS
(please indicate)

By
certified/1st class mail
hand delivery
inter-departmental
Other service/accomplished:

Deputy Circuit Clerk

13