534 S.E.2d 378

Martha J. BAKER, Plaintiff
Below, Appellee,

v.

BOARD OF EDUCATION, COUNTY
OF HANCOCK, Defendant
Below, Appellant.

No. 26567.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 16, 2000.

Decided June 28, 2000.

Dissenting Opinion of Justice
Starcher July 13, 2000.

Barbara G. Arnold, Esq., Parkersburg, West Virginia, Attorney for Appellee.

William T. Fahey, Esq., Assistant Prosecuting Attorney, Weirton, West Virginia, Attorney for Appellant.

Gregory W. Bailey, Esq., Howard E. Seufer, Jr., Esq., Bowles Rice McDavid Graff & Love, PLLC, Charleston, West Virginia, Attorneys for Amicus Curiae West Virginia Association of School Administrators.

J. David Cecil, Esq., James F. Humphreys & Associates, Charleston, West Virginia, Attorney for Amicus Curiae West Virginia Association of Elementary and Middle School Principals.

PER CURIAM:

The Hancock County Board of Education (the "Board") appeals a decision of the Circuit Court of Hancock County in which the court reinstated appellee Martha J. Baker to her job as an elementary school principal, overturning the decision of an administrative law judge who had decided in favor of the Board. The Board appeals and argues that it fulfilled its statutory obligations to Ms. Baker when it decided not to renew her contract. We concur with the arguments of appellant, and for reasons set forth below, reverse.

## I.

### BACKGROUND

The Board employed Ms. Baker as an assistant principal at Allison Elementary School in Hancock County, West Virginia for the 1995–96 school year. Ms. Baker then applied for the job of principal at Jefferson Elementary School for the 1996–97 school year. As part of the hiring process, the county superintendent of schools conducted an interview with Ms. Baker, where he expressed concern over the "tone of voice" she

used with students, and complaints that she had not consistently arrived at work "on time." In spite of these concerns, the Board voted to award Ms. Baker a one-year probationary contract for the principal's job at Jefferson Elementary.[1] The contract would be subject to review and potential renewal at the end of the 1996–97 school year.

Early that school year, the superintendent of schools for the county had several meetings with Ms. Baker regarding her performance on the job. He memorialized these meetings in a letter to Ms. Baker on September 23, 1996. In that letter he reminded her of the two issues discussed in the above-mentioned interview, and noted that he had heard reports that she was still arriving late to work, a charge he verified by an early visit to the school. He also informed Ms. Baker that his recommendation for a renewal of her contract would be contingent upon a satisfactory evaluation and that her promptness in arriving to work would be an aspect of that evaluation.

Apparently the superintendent's dissatisfaction with Ms. Baker continued, and he had several additional meetings with her, which he memorialized in a letter to Ms. Baker on January 31, 1997. In that letter he recalled a meeting in which he told her that arriving at 8:10 a.m. was not satisfactory and that she was to arrive by 8:00 a.m. He also noted that he was unable to document any improvement on her part when he visited the school on two occasions. Finally, he referred to having Ms. Baker "log-in" to a school computer that would document her arrival time each day.

At the end of that school year, the superintendent prepared an "administrative evaluation" dated May 1, 1997, in which he rated Ms. Baker as being unsatisfactory in two of six categories. However, in spite of this, he still included Ms. Baker in the list of proba-tionary employees whom he recommended for contract renewal. In spite of this recommendation, at the April 28, 1997 meeting of the Board, the members of the Board voted three to two against hiring Ms. Baker for another year, thus ending her employment with the Board. The Board communicated this decision to Ms. Baker by certified letter on April 29, 1997.

Ms. Baker requested a hearing on this decision, pursuant to W. Va.Code § 18A–2–8a (1977), and the Board scheduled a hearing for May 21, 1997. Unfortunately, Ms. Baker had to request a continuance due to injuries she sustained in a car accident and the hearing was delayed until September 3, 1997.[2] The Board finally sent Ms. Baker a letter on October 1, 1997, which informed her that "a majority of the Board denied [her] contract on grounds of insubordination and willful neglect of duty."

Sometime before the September hearing, Ms. Baker had filed a grievance with the West Virginia Educational Employees Grievance Board, which she ultimately lost at the so-called "Level IV hearing" before an administrative law judge (the "ALJ"). First, the ALJ found that W. Va.Code § 18A–2–8a (1977) (which specifically refers to the termination of probationary employees) applied to Ms. Baker's grievance, and that, accordingly, W. Va.Code § 18A–2–8 (1990) (which is a non-specific section dealing with employee termination) did not apply. The ALJ was uncertain whether W. Va.Code § 18A–2–12 (1990) applied to probationary employees like Ms. Baker, but found that even if that section did apply, Ms. Baker had still received all the protections she was due under W. Va.Code § 18A–2–12 (1990).

Ms. Baker appealed this decision to the Circuit Court of Hancock County, which re-

---

1. There is no dispute that Ms. Baker was considered a "probationary" employee, and not a "continuing" employee. Because we take Ms. Baker's allegation that she was a probationary employee at face value, we need not engage in any further analysis of why she was a probationary employee, or how other factors might affect one's probationary status.

2. In the intervening period, Ms. Baker had also filed the grievance that resulted in this opinion.

Because the grievance process was occurring at the same time, the record reflects confusion on the part of the Board and counsel for both sides as to the specific purpose of the hearing of September third. It appears that the Board regarded it as the continuance of the hearing Ms. Baker requested under section 8a, and that Ms. Baker's counsel considered it to be part of the grievance process.

versed the ALJ and found that W. Va.Code § 18A–2–12 (1990) did apply to Ms. Baker, and that, accordingly, she was entitled to an "improvement period" before the Board could decide to end her employment. The lower court also found that the Board had failed in its obligations under W. Va.Code § 18A–2–8a (1977), by not giving Ms. Baker timely notice of the reasons the Board did not renew her contract. We do not agree with either of these conclusions and reverse.

## II.

## STANDARD OF REVIEW

■ We have often reiterated the deference accorded to a decision of a hearing examiner or administrative law judge in cases such as this. "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1, *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989). The standard by which the circuit court may judge the ALJ is also clearly established, "[A] court may set aside a decision of a hearing examiner for the Board if it is arbitrary, capricious, an abuse of discretion, or contrary to law." *Martin v. Randolph County Board of Education,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995).

■ When this Court examines the findings of a circuit court, we employ the same standard: "This Court reviews decisions of the circuit under the same standard as that by which the circuit reviews the decision of the ALJ .... We review *de novo* the conclusions of law and application of law to the facts." *Id.*

## III.

## DISCUSSION

The Board makes two assignments of error: that the lower court erred when it found that Ms. Baker was entitled to a "written improvement plan" and subsequent "improvement period" before the Board could decide not to renew her contract; and that the court erred when it found that the Board failed its notice obligations under W. Va.Code § 18A–2–8a (1977).

■ First we point out that we generally accord deference to boards of education in personnel matters: "County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." Syl. pt. 3, *Dillon v. Wyoming County Board of Education,* 177 W.Va. 145, 351 S.E.2d 58 (1986).

As an initial matter, we refute Ms. Baker's allegation that W. Va.Code § 18A–2–8 (1990) applies to this case. Section 8 provides how a Board may terminate an employee who has not performed adequately, but it makes no distinction between "probationary" or "continuing" employees:

Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge. A charge of unsatisfactory performance shall not be made except as the result of an employee performance evaluation pursuant to section twelve of this article. The charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine, chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended, except that dismissal for the conviction of a felony or guilty plea or plea of nolo contendere to a felony charge is not by itself a grievable dismissal. An employee charged with the commission of a felony may be reassigned to duties which do not involve direct interaction with pupils pending final disposition of the charges.

W. Va.Code § 18A–2–8 (1990). However, immediately following section 8 in the Code, we find section 8a, which does specifically address probationary employees:

> The superintendent at a meeting of the board on or before the first Monday in May of each year shall provide in writing to the board a list of all probationary teachers that he [or she] recommends to be rehired for the next ensuing school year. The board shall act upon the superintendent's recommendations at that meeting in accordance with section one of this article. The board at this same meeting shall also act upon the retention of other probationary employees as provided in sections four and five of this article. Any such probationary teacher or other probationary employee who is not rehired by the board at that meeting shall be notified in writing, by certified mail, return receipt requested, to such persons' last known addresses within ten days following said board meeting, of their not having been rehired or not having been recommended for rehiring.
>
> Any probationary teacher who receives notice that he [or she] has not been recommended for rehiring or other probationary employee who has not been reemployed may within ten days after receiving the written notice request a statement of the reasons for not having been rehired and may request a hearing before the board. Such hearing shall be held at the next regularly scheduled board of education meeting or a special meeting of the board called within thirty days of the request for hearing. At the hearing, the reasons for the nonrehiring must be shown.

W. Va.Code § 18A–2–8a (1977).

 Obviously this section creates a procedure for the board to follow when dealing with probationary employees. Just as obviously, in order for this provision to have any meaning whatsoever, the Legislature intended for probationary employees to be treated differently than non-probationary employees. We have remarked in prior cases that we may not presume that the Legislature intended to draft a meaningless statute:

> Another rule equally recognized is that every part of a statute must be construed in connection with the whole, so as to make all parts harmonize, if possible, and to give meaning to each. Syl. pt. 1, *Mills v. Van Kirk,* 192 W.Va. 695, 453 S.E.2d 678 (1994); *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990). That is to say, every word used is presumed to have meaning and purpose, for the Legislature is thought by the courts not to have used language idly.

*Bullman v. D & R Lumber Co.,* 195 W.Va. 129, 133, 464 S.E.2d 771, 775 (1995). Restating this idea in even more direct language, we have said that, "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syl. pt. 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars of the United States,* 147 W.Va. 645, 129 S.E.2d 921 (1963). We think it clear that the words of W. Va.Code § 18A–2–8a (1977) dictate how a board of education must interact with a probationary employee such as Ms. Baker. We come to this conclusion because any other analysis would render section 8a meaningless.

### A.

### W.Va.Code § 18A–2–12

First we address the "improvement plan" requirements of W. Va.Code § 18A–2–12 (1990). The lower court found this Code section mandated that the Board provide Ms. Baker with a "written improvement plan." In its appeal, the Board asks that we adopt the reasoning of the ALJ, arguing that either Ms. Baker as a probationary employee is not entitled to such an improvement plan (or any of the protections of section 12), or, if W. Va.Code § 18A–2–12 (1990) does apply to probationary employees, that the Board afforded Ms. Baker all the protections of the statute, and essentially provided her with an adequate plan of improvement.

W.Va.Code § 18A–2–12 (1990) creates an evaluation system for employees. It also requires a county board of education to take certain steps to correct unsatisfactory conduct by "professional personnel" (certified or

licensed employees, as opposed to "service personnel").[3] Specifically, a board must tell such professional employees of their deficiencies, must give them a plan to correct these deficiencies, and must allow a reasonable period of time to make such improvements. The statute, in pertinent part, reads as follows:

> A professional whose performance is deemed to be unsatisfactory shall be given notice of deficiencies. A remediation plan to correct deficiencies shall be developed by the employing county board of education and the professional. The professional shall be given a reasonable period of time for remediation of the deficiencies and shall receive a statement of the resources and assistance available for the purposes of correcting the deficiencies. . . .
>
> Any professional personnel *whose performance evaluation includes a written improvement plan* shall be given an opportunity to improve his or her performance through the implementation of the plan. If the next performance evaluation shows that the professional is now performing satisfactorily, no further action shall be taken concerning the original performance evaluation. If such evaluation shows that the professional is still not performing satisfactorily, the evaluator shall either make additional recommendations for improvement or may recommend the dismissal of such professional in accordance with the provisions of section eight of this article.

W. Va.Code § 18A–2–12 (1990) (emphasis added).[4]

■ We note that this last quoted paragraph states, "[a]ny professional personnel *whose performance evaluation includes a written improvement plan* . . . ." Implicit in this phrase is that not every professional

employee is automatically entitled to a written improvement plan. We take this to mean that a board need not always produce a specific document emblazoned "improvement plan" every time its administrators find problems with an employee's performance. Thus, we reject the trial court's contention that the Board violated the statute by not re-hiring Ms. Baker in the absence of such an "improvement plan" document.

■ Even though the Code may not require a written plan in every case, we are mindful of the important protections included in section 12. While we are not entirely convinced that W. Va.Code § 18A–2–12(1990) applies to Ms. Baker, assuming, *arguendo,* that section 12 applies to probationary employees, we feel that the Board complied with all its requirements in the context of this case. The superintendent gave Ms. Baker notice of her deficiencies several times in meetings and letters. He suggested a "remediation plan," namely: "come to work at the appointed time." He allowed her a reasonable period of time to make improvements in that she had the rest of the school year before the Board would consider her contract for renewal. Finally the superintendent suggested that the "resource" of the computer system could be used to document her improvement.

■ Although Ms. Baker's complaint is not a standard grievance, in coming to our conclusion, we are aware of the goal of the entire grievance process: "The legislative intent expressed in W. Va.Code, 18–29–1 (1985), is to provide a simple, expeditious and fair process for resolving problems." Syl. pt. 3, *Spahr v. Preston County Bd. of Educ.* 182 W.Va. 726, 391 S.E.2d 739 (1990). Ms. Baker argues that the Board or the superintendent's efforts still fail to meet the demands of

**3.** The statute contains the following definitions:

(b) "Professional personnel" means persons who meet the certification and/or licensing requirements of the state, and shall include the professional educator and other professional employees. . . .

(e) "Service personnel" means those who serve the school or schools as a whole, in a nonprofessional capacity, including such areas as secretarial, custodial, maintenance, transportation, school lunch and as aides.

W.Va.Code § 18A–1–1 (1997).

**4.** We note that this section refers us to W. Va. Code § 18A–2–8, which we have already explained does not apply to probationary employees such as Ms. Baker. While we agree with the Board that this reference in section 12 to a Code section not applicable to probationary employees suggests that section 12 might also not apply to probationary employees, we do not need to reach that issue in this opinion, as we discuss below.

the statute because she never received a specific document entitled "improvement plan." The process would be neither simple, nor expeditious, if it contained such a requirement.

Thus, we need not reach the issue of whether section 12 applies to probationary employees such as Ms. Baker, because we find that she received all the protections of the statute in this particular case.[5]

## B.

### W.Va.Code § 18–2–8a

Having determined that the Board was obligated to follow W. Va.Code § 18A–2–8a (1977) with respect to Ms. Baker, we examine the lower court's ruling that the Board failed in its obligations under that section. As quoted above, the statute establishes that any probationary employee who is not retained is entitled to notice of this decision, and may request a statement of the reasons he or she was not hired, as well as a hearing before the board. If the employee requests a hearing, the board must hold the hearing within thirty days, at which the board must show reasons for not renewing the employee's contract. W. Va.Code § 18A–2–8a (1977).

The lower court found that these actions of the Board were inadequate to comply with the Board's obligations under section 8a. Moreover, the court held that this failure by the Board to supply Ms. Baker with written reasons for her termination before October 1, 1997 was sufficient to overturn the decision of the ALJ and reinstate Ms. Baker to her job as principal. We do not agree.

As we noted in another employee grievance case dealing with this statute, the salient question is whether or not an employee receives adequate notice so that he or she can respond to a board's decision to not renew his or her contract:

> [I]t is important to remember the purpose of the notification requirement. In *State ex rel. Hawks v. Lazaro*, 157 W.Va. 417, 440, 202 S.E.2d 109, 124 (1974), we noted that "[n]otice contemplates meaningful notice which affords an opportunity to prepare a defense and to be heard upon the merits." Clearly, the legislature wanted probationary employees whose contracts were not being renewed to be timely notified so that the employees have an opportunity to respond in order to ensure that the nonrenewal was not occurring for unfair reasons.

*Miller v. Board of Educ. of Boone County,* 190 W.Va. 153, 158, 437 S.E.2d 591, 596 (1993).

In this case, neither party disputes that the Board supplied the required notice of its decision and that Ms. Baker requested a hearing within the statutory time period. As indicated in the record, the Board had scheduled a hearing for May 21, 1997. Unfortunately, Ms. Baker had to request a continuance due to injuries she sustained in a car accident, so the hearing was delayed until September 3, 1997. At the September hearing, the superintendent testified extensively[6] regarding Ms. Baker's employment difficulties, recalling the discussions he had with her regarding her late arrival and her inability to correct that problem.

We do not face a situation where an employee was dismissed without any warning or explanation. There can be no question that any reasonable person in Ms. Baker's position would understand why the Board voted to not renew her contract. It is true that the Board did not provide Ms. Baker with its "official" reasons for not renewing her contract for some time. However, we find untenable the lower court's holding that

---

**5.** By not reaching this ultimate issue we do not mean to suggest that probationary employees are affirmatively entitled to all the protections enjoyed by continuing employees. Adopting that view is tantamount to doing away with the "probationary" classification entirely. We do not lose sight of the fact that probationary employees, *a fortiori,* are not the same as non-probationary employees. That we find it necessary to state

this truism sheds some light upon the bureaucratic complexities contained in chapter 18A of the Code.

**6.** The Board called a special meeting for the hearing, which lasted for nearly five hours and is memorialized in a 100 page transcript supplemented with some 30 exhibits.

this delay was sufficiently prejudicial to result in Ms. Baker's reinstatement. Accordingly, we reverse.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Hancock County is reversed.

Reversed.

STARCHER, Justice, dissenting:

(Filed July 13, 2000)

I do not think that the circuit court erred in reinstating Ms. Baker. She was clearly entitled to a formal, written, improvement plan. The majority strains to find reasons that she was not entitled to such a plan, but ultimately the majority concedes that she might be so entitled. The question then is: Is telling a person to "be on time" a formal, written improvement plan? I say "No."

I don't believe this Court has ever before "backslid" like this in a teacher's rights case—allowing a school board to come up with "after the fact" reasons and to ignore the requirement of meaningful, written improvement plans. Fortunately this opinion is *per curiam* and can be viewed as an outlier from our established law in this area.

Accordingly, I dissent.