# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kerra Layne,**
**Petitioner Below, Petitioner**

**FILED**

**February 17, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 16-0407**  (Kanawha County 15-AA-61)

**Kanawha County Board of Education,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kerra Layne, by counsel Andrew J. Katz, appeals the March 17, 2016, order of the Circuit Court of Kanawha County that affirmed the decision of the West Virginia Education and State Employees Grievance Board upholding her suspension without pay; upholding the decision of Respondent Kanawha County Board of Education ("the Board") not to renew her probationary contract for the school year 2014-15; and ordering an award of back pay for the eight days petitioner was suspended beyond the statutory maximum without the approval of the Board, in violation of West Virginia Code § 18A-2-7(c). The Board, by counsel James W. Withrow, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was employed by the Board, on a probationary basis, as a sign language interpreter and was assigned to Stonewall Jackson Middle School ("Stonewall"). Petitioner's employment with the Board began in January of 2014.

On January 30, 2014, Stonewall Principal Jessica Austin met with petitioner regarding petitioner's "erratic" behavior. The school nurse was also present at the meeting in order to observe because Principal Austin believed petitioner might be impaired. During the meeting, petitioner informed Principal Austin that she has scoliosis, which causes her to move her body about, and general anxiety disorder, which causes her to have rapid, "pressured" speech. The lower tribunals found that when petitioner advised Principal Austin "that she felt she had a history from jobs she had held in the past and did not want to be judged based upon that, Ms. Austin assured petitioner that she was welcome at Stonewall and that they would 'move forward' with what Ms. Austin observed of petitioner there."[1] Principal Austin, at that time, did not

---

[1] It is unclear what petitioner meant by this remark.

1

request that petitioner submit to a drug or alcohol test. However, Principal Austin requested that petitioner submit documentation of her medical conditions. Petitioner never provided the requested documentation to Principal Austin nor presented documentary evidence of her purported medical conditions during the proceedings in this case.

Thereafter, on March 28, 2014, five employees at Stonewall informed Principal Austin that they believed petitioner was behaving erratically. In particular, petitioner was seen in a vehicle in a nearby parking lot during her lunch period waving her arms about as if she were "fighting" with someone. Several employees also reported seeing her "chasing" pieces of paper across the parking lot. Petitioner was also seen staggering or tripping in the classroom and knocking over a can of pencils in the office and that a bathroom vacated by petitioner smelled like something had been lit on fire or was burning. According to Principal Austin, petitioner was late to work that morning and either failed to sign in or punch in when she arrived, as required.[2]

Principal Austin contacted Carol Hamric, Executive Director of Human Resources for the Board, regarding petitioner. Ms. Hamric instructed Principal Austin to personally evaluate petitioner's behavior.

Principal Austin then met with petitioner in her office. During the meeting, Principal Austin observed that petitioner could not sit still and appeared to be extremely anxious. Principal Austin recorded her observations of petitioner's behavior during the meeting on the Reasonable Suspicion Observation Checklist form ("Checklist"). She specifically noted on the Checklist that petitioner's eyes were "glassy;" that her speech was "rambling" and "dry mouthed;" that she was "overly talkative" and displayed "exaggerated politeness;" and that she displayed "quick moving" actions and "body contortions; couldn't hold her pen in her hand." Petitioner explained that she dropped her pen because she has carpal tunnel syndrome; however, petitioner never provided proof of this medical condition to either Principal Austin or the Board. With regard to petitioner's appearance, Principal Austin indicated on the Checklist that petitioner's hair was "messy." Finally, under "other observations," Principal Austin handwrote that petitioner was "fixated on items in her bag." When Principal Austin asked petitioner if there was something in the bag she was concerned about, petitioner said, "no," and offered to show Principal Austin what was in the bag. Principal Austin declined the offer. Finally, during the meeting, Principal Austin found petitioner's repeated questions concerning whether she (petitioner) appeared to be coherent to be highly unusual.

Based upon Principal Austin's personal observation that petitioner's demeanor at the March 28, 2014, meeting was "drastically different" than petitioner's usual demeanor and the reports from other school employees, Principal Austin suspected that petitioner was impaired. Out of concern for petitioner's safety and the safety of the students, Principal Austin contacted Human Resources Director Hamric while petitioner was still in her office and recommended that petitioner undergo a drug test. Ms. Hamric advised that she would send a team to the school to administer the test. However, petitioner refused to submit to such a test. Ms. Hamrick explained to petitioner that there could be serious consequences for refusing to take a drug test. Petitioner

---

[2] According to Principal Austin, petitioner was often absent from work.

responded that she was aware of the consequences but that she had been advised in the past not to take another drug test.[3] Thereafter, petitioner informed Principal Austin that she wished to make a telephone call, and needed to use a school phone because her cell phone was not working. According to petitioner, she intended to call her lawyer to seek advice as to whether she should submit to the drug test. However, it is undisputed that petitioner never informed Principal Austin that she wished to call her lawyer. According to petitioner, Principal Austin refused to allow her to make the call.

By letter dated April 2, 2014, Board Superintendent Ronald E. Duerring notified petitioner that she was suspended, without pay, based upon her refusal to submit to a "for cause drug test." Superintendent Duerring's letter further advised petitioner that "leaving the work area prior to the test or failure to cooperate with the drug testing process is grounds for termination of employment," pursuant to Kanawha County Board of Education Policy, Employee Drug Use Prevention Policy ("Drug Policy") 81.10.

By letter dated April 8, 2014, Superintendent Duerring advised petitioner that her probationary contract of employment was not recommended for renewal for the 2014-15 school year. Petitioner thereafter filed a grievance on the ground that she was asked to take a drug test without proper cause; that she was suspended without cause and without a pre-determination hearing; and that the length of the suspension was too extreme.[4] A Level I hearing was held on May 2, 2014.[5] A decision denying the grievance was issued on May 29, 2014.

Meanwhile, at petitioner's request, a hearing before the Board was conducted on May 7, 2014, concerning whether petitioner's contract should be renewed. The Board unanimously voted to approve the recommendation of non-renewal. Furthermore, on May 21, 2014, petitioner filed a second Level I grievance to grieve the non-renewal of her probationary contract. A Level I conference was held on June 10, 2014, and a decision denying the grievance was issued on June 17, 2014.

Ultimately, the two grievances were consolidated and an unsuccessful Level II mediation was held on August 7, 2014. The grievance proceeded to Level III and a hearing was conducted before the West Virginia Education and State Employees Grievance Board ("Grievance Board"). The Grievance Board granted, in part, and denied, in part, petitioner's grievance. The Grievance Board concluded that petitioner's initial suspension and non-renewal of her contract were appropriate. The Grievance Board also concluded that petitioner's suspension exceeded the thirty-day statutory maximum without the approval of the Board, and, accordingly, awarded petitioner back pay "for any days of work she missed during days thirty-one through thirty-eight

---

[3] It is unclear what petitioner meant by this statement.

[4] Petitioner also alleged that her suspension was based, in part, on gender and disability discrimination. Petitioner did not pursue these claims.

[5] The grievance was amended during the Level I hearing to include the allegation that petitioner was not permitted to use the telephone during the March 28th meeting with Principal Austin.

3

of her suspension." *See* W.Va. Code § 18A-2-7(c).

Petitioner appealed the Grievance Board's decision to the Circuit Court of Kanawha County, which affirmed the decision by order entered March 17, 2016. This appeal followed.

This Court reviews decisions of the circuit court in grievance board proceedings as follows: "When reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. Pt. 1, *Martin v. Barbour Cty. Bd. of Educ.,* 228 W. Va. 238, 719 S.E.2d 406 (2011). Furthermore,

> [g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. Pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.,* 208 W. Va. 177, 539 S.E.2d 437 (2000). *See also* Syl. Pt. 2, *Shanklin v. Bd. of Educ. of Cnty. of Kanawha*, 228 W. Va. 374, 719 S.E.2d 844 (2011) (holding that "'[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W. Va.Code, [6C–2–1], et seq. [ ], and based upon findings of fact, should not be reversed unless clearly wrong.' Syl. pt. 1, *Randolph Cnty. Bd. of Educ. v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989)."). With these standards of review in mind, we now consider the issues raised in this appeal.

In her first assignment of error, petitioner argues that the lower tribunals made an important factual error that "tilted the ultimate decision in favor of" the Board. In particular, petitioner contends that there was no evidence to support the finding that petitioner's demeanor during the March 28, 2014, meeting was "'drastically different' than her demeanor/behavior prior to that time." Petitioner argues that Principal Austin was familiar with petitioner's usual demeanor—including restlessness, unusual body movement, and rapid speech—and that the only difference during the March 28th meeting was that petitioner's movement was more pronounced and that petitioner's hair was messy. Petitioner contends that this "can hardly be called sufficient evidence that [petitioner] was acting 'drastically different' than was customary" such that it was a sufficient basis for a "reasonable suspicion" drug test.

Based upon our review of the evidence and the orders of the lower tribunals, we find no clear error. Indeed, petitioner's account of the evidence is not entirely accurate. Rather, based upon Principal Austin's personal observations of petitioner during the meeting, she specifically noted on the Checklist that petitioner had "glassy" eyes, rambling speech, dry mouth, was overly talkative, and acted with exaggerated politeness. Principal Austin also noted petitioner's quick movements, body contortions, that petitioner dropped her pen, had messy hair, and was fixated

4

on her bag.[6] Although Principal Austin had observed some of these behaviors before, she testified that, during the meeting, they were "accelerated," "heightened," and "extreme," and that the difference was "pretty drastic to the point where I was concerned." Given this evidence, it was not clearly wrong for the Grievance Board and circuit court to so find and, in turn, to conclude that Principal Austin appropriately determined that petitioner may have been under the influence of drugs or alcohol such that a reasonable suspicion drug test was warranted.

In her second assignment of error, petitioner argues that a reasonable suspicion drug test was not warranted because petitioner proved that there was a "non-impaired reason for her conduct." Petitioner contends that Principal Austin was inexperienced in her role as principal[7] and was not trained to consider petitioner's explanations for her behavior that had nothing to do with impairment due to alcohol or drug use. In particular, petitioner argues that Principal Austin failed to consider that petitioner has scoliosis, which caused her to move her torso "quite a bit;" that petitioner's anxiety disorder "may have made her mouth dry or caused her to speak rapidly;" and that petitioner's carpal tunnel syndrome "may [a]ffect her ability to hold a pen." Petitioner relies on a prior Grievance Board decision that reversed the termination of a grievant's employment for the grievant's refusal to take a drug test because the employer did not have a reasonable suspicion to conduct such a test. In *Lewis v. Department of Health and Human Resources/William R. Sharpe, Jr. Hospital*, Docket No. 2014-1158-DHHR (October 21, 2014), the Grievance Board determined that the grievant completed his shift "during which no one reported any unusual behavior or impairment causing any poor work performance;" that "the observations used to support reasonable suspicion for testing were characteristics that Grievant

---

[6] Drug Policy 81.11 regarding "for cause testing," provides, in relevant part, that whenever the Board or a person authorized to act,

> reasonably suspects that an employee's work performance or on-the-job behavior may have been affected in any way by illegal drugs or alcohol or that an employee has otherwise violated [the Board] Drug-Free Workplace Substance Abuse Policy, the employee will be required to submit a breath and/or urine sample for drug and alcohol testing. . . .

> An employee who is required to submit to drug/alcohol testing based upon reasonable suspicion and refuses will be charged with insubordination, and necessary procedures will be taken to terminate the employee in accordance with Board Policy and state law.

Drug Policy 81.11 further sets forth the types of cases for which reasonable suspicion procedures may be invoked, including so-called "acute cases," which means, among other things "appearing in a specific incident or observation to then be under the present influence of alcohol and/or drugs." Specific examples of "[c]ircumstances under which substance screening may be considered . . . include . . . [a]pparent physical state of impairment of motor functions [and] [m]arked changes in personal behavior not attributable to other factors." *Id.*

[7] Petitioner states that Principal Austin was "a first year principal dealing with her first reasonable suspicion drug incident[.]"

5

customar[ily] displayed during his more than four years of employment;" and that "[t]he behavior described by Grievant's supervisors and co-workers could be attributed to his nervousness over the predetermination conference and pending discipline." *Id.* at 11. Petitioner argues that her case is similar to *Lewis* because she gave a satisfactory explanation for her behavior upon which reasonable suspicion of drug or alcohol use was based; she thus argues that reasonable suspicion did not exist and that her termination for failure to submit to a drug test must be reversed.

Upon our review of the record, we find no error. Notwithstanding petitioner's argument to the contrary, we find the facts in *Lewis* to be readily distinguishable from petitioner's case. In the case sub judice, several employees observed petitioner behaving erratically and reported their observations to Principal Austin. Importantly, Principal Austin was familiar with petitioner's customary behavior. As previously noted, during her meeting with petitioner on March 28, 2014, Principal Austin personally observed that petitioner's unusual body movements and rapid speech were "accelerated," "heightened," and "extreme." In addition, Principal Austin noted, for example, that petitioner had "glassy" eyes, "rambling" speech, was "dry mouthed," "overly talkative," displayed "exaggerated politeness," "couldn't hold her pen in her hand," had "messy" hair, and asked whether she (petitioner) appeared to be coherent. Unlike in *Lewis*, Principal Austin was familiar with petitioner's usual behavior such that the drastic differences and unusual actions she observed at the March 28th meeting led her to be reasonably suspicious that petitioner was under the influence of alcohol or drugs. Furthermore, we note that although petitioner avers that the perceived unusual behavior could be explained by certain medical conditions, petitioner failed to present the documentation of these conditions requested by Principal Austin during their prior meeting.[8] Based upon the foregoing, we conclude that petitioner failed to prove that there was a "non-impaired reason" for her conduct such that a reasonable suspicion drug test was not warranted.

Next, petitioner argues that she was entitled to a predetermination hearing before being suspended without pay. Petitioner contends that she had an employment contract "to work the entire 2013-14 school year," and that her due process rights were violated when she was suspended, without pay, on March 29, 2014, without a hearing.

We find no error. It is undisputed that petitioner was a probationary employee. This Court has held that "the Legislature intended for probationary employees to be treated differently than

---

[8] As the Grievance Board reasonably surmised,

> It does not make sense that Grievant would fail to provide such documentation, if it existed, when it could have explained some of the unusual behaviors questioned by her employer. Grievant failed to establish that she had the medical disabilities she claimed. However, even if Grievant proved she had all the medical conditions/diagnoses she described . . . they would not necessarily explain why Grievant was seen stumbling or tripping in the classroom and knocking over pencils or avert "reasonable suspicion" under the circumstances. These actions are suggestive of motor impairment, which is not a symptom of the claimed conditions.

non-probationary employees." *Baker v. Bd. of Educ., Cty of Hancock*, 207 W. Va. 513, 517, 534 S.E.2d 378, 382 (2000). Whereas West Virginia Code § 18A–2–8 applies to the suspension and dismissal of tenured employees,[9] West Virginia Code § 18A-2-8a governs the "after-the-fact" procedure for the "rehiring or nonrehiring" of probationary employees such as petitioner, providing, inter alia, that "[a]ny . . . probationary teacher or other probationary employee who is not rehired by the board . . . shall be notified in writing . . . within ten days following said board meeting, of their not having been rehired or not have been recommended for rehiring." The statute further provides that the probationary teacher or employee who has not been rehired "may within ten days after receiving the written notice request a statement of the reasons . . . and may request a hearing before the board." *Id. See Baker* at 520, 534 S.E.2d at 385. With regard to the suspension of a probationary employee, West Virginia Code § 18A-2-8a is unequivocally silent on this issue and, thus, does not provide for notice and a hearing prior thereto. Indeed, petitioner cites to no legal authority, statutory or otherwise, that requires a pre-suspension hearing of a probationary employee. Thus, we find that petitioner has failed to prove that she was entitled to a hearing prior to being suspended from her employment without pay.

In her next assignment of error, petitioner argues that the lower tribunals erred in concluding that the Board did not have to permit petitioner to contact her lawyer prior to the administering of the drug test. Petitioner contends that she was entitled to representation at the March 28th meeting with Principal Austin pursuant to West Virginia Code § 6C-2-3(g)(1), which provides that "[a]n employee may designate a representative who may be present at any step of the [grievance] procedure as well as at any meeting that is held with the employee for the purpose of discussing or considering disciplinary action." According to petitioner, she requested the use of the school telephone to make a telephone call, but Principal Austin refused her request. Petitioner concedes that she failed to disclose to Ms. Austin whom she wished to call or, importantly, that she wished to call her lawyer for advice regarding whether to submit to the drug test.

In past cases, the Grievance Board has concluded, with regard to a board employee's right to representation under West Virginia Code § 6C-2-3(g), that "[i]n order to be denied a right, . . . one must invoke the right." *Hill v. Div. of Corr.*, Docket No. 2010-0113-MAPS at 8. (January 6, 2010) *See Id.* (stating that "[t]he evidence does not establish that Grievant did, in fact, request a witness, and he clearly did not 'designate a representative.' Grievant made a passing remark as he was going into the predetermination meeting. This does not amount to a request for a witness, and it clearly does not amount to a request for a representative. Grievant was not denied the right to representation."); *Koblinsky v. Putnam Cnty Health Dept.*, Docket No. 2010-1306-CONS at 10 (November 8, 2010) (stating that if the topic of the meeting held

---

[9] *See* Syl. Pt. 3, *Bd. of Educ. of Cty of Mercer v. Wirt,* 192 W. Va. 568, 453 S.E.2d 402 (1994) (holding that "[u]nder W.Va.Code, 18A–2–8 (1990), due process requires a pre-termination hearing of a tenured employee under W.Va.Code, 18A–2–6 (1989). It is not necessary for a pre-termination hearing to be a full adversarial evidentiary hearing; however, an employee is entitled to a written notice of the charges, an explanation of the evidence, and an opportunity to respond prior to a Board of Education's decision to terminate the employee. If an employee presents a danger to students or others at work and there is no reasonable way to abate the danger, a pre-termination hearing is not required.").

pursuant to West Virginia Code § 6C-2-3(g)(1) "is conduct of the employee that could lead to discipline, the employee has a statutory right to have a representative present, *if she makes such a request*." (Emphasis added and footnote omitted)). We find such a reading of West Virginia Code § 6C-2-3(g)(1) to be persuasive; indeed, petitioner does not argue otherwise. Accordingly, given that petitioner did not make an affirmative request to call her lawyer, we find that the Board did not violate petitioner's rights under West Virginia Code § 6C-2-3(g)(1).

In her final assignment of error, petitioner argues that the lower tribunals erred in ruling that the Board's decision not to renew petitioner's employment contract was tantamount to upholding her suspension and did not violate West Virginia Code § 18A-2-7. Petitioner argues that while the Board voted not to renew her contract at its May 7, 2014, meeting, it failed to approve petitioner's unpaid suspension. It is petitioner's contention that, even though the underlying reasons for the nonrenewal and suspension were the same (i.e., petitioner's refusal to take a reasonable suspicion drug test), the burdens of proof were not. Petitioner argues that the burden of proving that the Board's decision not to renew petitioner's contract (a non-disciplinary matter) was on petitioner while the burden of proving that the Board's act of suspending petitioner without pay (a disciplinary matter) was not arbitrary or capricious was on the Board. *See* Syl. Pt. 2, *Beverlin v. Bd. of Educ. of Lewis Cty.*, 158 W. Va. 1067, 216 S.E.2d 554 (1975) (holding that "[t]he power of a county superintendent of schools to assign, transfer, suspend or promote teachers under W.Va.Code 1931, 18-4-10, as amended, must be exercised in a reasonable manner. The best interests of the schools must be intended. Arbitrary or capricious use of the power will not survive judicial scrutiny."). Thus, petitioner argues, the Board's decision not to renew petitioner's contract cannot constitute a ratification of the superintendent's decision to suspend petitioner without pay.

Based upon our careful review of the record, we conclude that the Board presented ample evidence to support both petitioner's suspension and the nonrenewal of her contract. Petitioner had the opportunity to present evidence, cross-examine the Board's witnesses, and present rebuttal evidence at the May 7th Board meeting. Petitioner does not dispute that petitioner's suspension was explicitly discussed in the context of the events that precipitated the actions taken by the Board. Ultimately, the Board voted unanimously not to renew petitioner's contract, thereby implicitly approving petitioner's suspension. We note further that, as the hearing transcripts reveal, the evidence presented at the various hearing levels was essentially the same. Petitioner's brief to this Court fails to indicate how the shifting of burdens at a hearing dedicated to petitioner's suspension would have produced a different result. Thus, under the unique facts and circumstances of this case, we conclude that petitioner's argument that the Board failed to approve her suspension, thereby warranting an award of backpay through the remainder of the 2013-14 school year, is without merit.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 17, 2017

8

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISQUALIFIED:**

Justice Margaret L. Workman