# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jaime C. Walker,**
**Petitioner Below, Petitioner**

**FILED**

**September 5, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 16-0659** (Pocahontas County 15-AA-102)

**Pocahontas County Board of Education,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jaime C. Walker, by counsel J. Steve Hunter, appeals the Circuit Court of Kanawha County's June 10, 2016, order reversing the decision of the West Virginia Public Employees Grievance Board ("the Board"). Respondent Pocahontas County Board of Education ("BOE"), by counsel Denise M. Spatafore and Jason S. Long, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in reversing the decision of the Board because the circuit court erred in finding that petitioner had not timely filed his grievance and in reversing the Board's decision granting him relief.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2013, the BOE posted two school service personnel job vacancies for a mechanic and a chief mechanic. Both of the postings set out the terms of employment as 240-day positions to be effective July 1, 2013, and to continue for the remainder of the 2012-2013 school year. Petitioner, who was qualified for both positions, submitted his application for both job vacancies and, prior to filing his applications, passed the mechanic competency test, was on the emergency mechanic substitute list, and had been employed by the BOE for approximately twelve years. After submitting his applications, petitioner was interviewed for both positions by the BOE school superintendent, C.C. Lester. During the course of the interview process, petitioner specifically inquired as to whether the positions would be increased to 261-day positions or if the positions would remain as listed. The superintendent stated that the positions would not be changed and would remain 240-day positions. Petitioner later withdrew his applications for both positions. Thereafter, Justin Tyler and Ian Bennett submitted applications for the two posted positions.

In July of 2013, the BOE selected Mr. Tyler to fill the chief mechanic position and Mr. Bennett to fill the mechanic position under 240-day contracts that were retroactive to July 1, 2013, and continued for the remainder of the 2013-2014 fiscal year. Sometime after Mr. Tyler and Mr. Bennett accepted the positions as offered, they appeared before the BOE and requested

1

that their contracts be increased to 261-day positions. The requests were placed on the BOE's July of 2013 meeting agenda and later approved by the BOE effective July 31, 2013. Petitioner did not work during the summer months and was out of state. He heard about the BOE's contract modification from a friend on or about July 31, 2013.

In August of 2013, petitioner filed a Level One grievance challenging the modification of the contract terms, from 240 days to 261 days, after they were filled. Following a hearing, the Board denied petitioner's grievance on September of 2013.

In September of 2013, petitioner appealed the denial to Level Two of the grievance procedure. Following an unsuccessful mediation, petitioner appealed to Level Three in January of 2014. Following a hearing, the Administrative Law Judge ("ALJ") issued a decision in July of 2015 in which it found that petitioner demonstrated an interest in the posted positions and had standing to challenge the change in the contract terms as a misleading notice of the vacancies to applicants and potential applicants. In July of 2015, the BOE appealed the ALJ's decision to the circuit court. By order entered on June 10, 2016, the circuit court reversed the ALJ's decision and found that petitioner's grievance was not timely filed as required by West Virginia Code § 6C-2-1 and that he did not have a valid excuse for the untimely filing. It is from this order that petitioner appeals.

The Court has previously established the relevant standard of review:

> "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syllabus Point 1, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Syl. Pt. 1, *Darby v. Kanawha Cty. Bd. of Educ.*, 227 W.Va. 525, 711 S.E.2d 595 (2011). Further, we have held that

> "[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W. Va. Code, [6C–2–1], et seq. [ ], and based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1, *Randolph Cnty. Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989).

Syl. Pt. 3, *Armstrong v. W.Va. Div. of Culture and History*, 229 W.Va. 538, 729 S.E.2d 860 (2012). Upon our review, the Court finds that the circuit court did not err in reversing the Board's decision.

On appeal to this Court, petitioner argues that the circuit court erroneously found that his grievance was not timely filed as required by West Virginia Code § 6C-2-1. Petitioner contends that the grievance time limits were tolled because, as a BOE employee "holding [a] 200-day [contract], he was not working and his workplace was 'legally closed by policy and practice . . . between the first week of June and the middle of August.'" The Court, however, does not agree.

We begin our analysis with a review of West Virginia Code § 6C-2-4(a)(1), which identifies the time limits for filing a grievance. It provides that

> [w]ithin fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date upon which the event became known to the employee, or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, an employee may file a written grievance with the chief administrator stating the nature of the grievance and the relief requested and request either a conference or a hearing. . . .

*Id.* West Virginia Code § 6C-2-2(c) defines "days" as "working days exclusive of Saturday, Sunday, official holidays and any day in which the employee's workplace is legally closed under the authority of the chief administrator due to weather or other cause provided for by statute, rule, policy or practice." Further, the only time an employee is excused from complying with the timelines established in West Virginia Code § 6C-2-4 is when the employee "is not working because of accident, sickness, death in the immediate family or other cause for which the grievant has approved leave from employment." W.Va. Code § 6C-2-3(a)(2).

Here, there is no dispute that petitioner did not timely file his grievance. According to the record, the BOE modified Mr. Tyler and Mr. Bennett's contracts on July 29, 2013. Petitioner heard about the BOE's contract modification on or about July 31, 2013 and initiated a grievance with the Board on August 23, 2013, more than fifteen days following the contract modification. Contrary to the ALJ's finding otherwise, petitioner's late filing was not excused by any exception established in West Virginia Code § 6C-2-1. Petitioner was not working due to an accident, sickness, death in the family or other approved leave. Moreover, there is no provision in the law that excuses an employee, like petitioner, from filing a grievance within the timelines established by statute because the grievable incident occurred during a time that was outside his normal contract term. Further, while petitioner did not work during a portion of the summer months, this time period "closure" pertains to his employment contract, rather than the workplace itself. As petitioner acknowledges in his appeal, school facilities are often open during the summer months, used for summer school programs, and employ service personnel during those programs. *See* West Virginia Code § 18-5-39 (2000). Moreover, even employees like petitioner with 240-day contracts continue to work throughout the calendar year in order to comply with legislative mandates regarding the minimum amount of days for student instruction. *See* W. Va. Code § 18-5-45 (2017). For the foregoing reasons, we find no error in the circuit court's June 10, 2016, order reversing the decision of the Board.

As for petitioner's contention that the BOE violated the notice requirements of West Virginia Code § 18A-4-8b. West Virginia Code § 18A-4-8b(2) provides that

[n]otice of a job vacancy shall include the job description, the period of employment, the work site, the starting and ending time of the daily shift, the amount of pay and any benefits and other information that is helpful to prospective applicants to understand the particulars of the job. The notice of a job vacancy in the aide classification categories shall include the program or primary assignment of the position. Job postings for vacancies made pursuant to this section shall be written to ensure that the largest possible pool of qualified applicants may apply. Job postings may not require criteria which are not necessary for the successful performance of the job and may not be written with the intent to favor a specific applicant.

Despite petitioner's argument that the BOE's subsequent modification in the employment contract terms rendered the job vacancy postings inaccurate, the evidence on the record established that, at the time the job vacancies were posted, the information in those postings were accurate and complied with West Virginia Code § 18A-4-8b. Moreover, nothing in the record suggests that the superintendent who interviewed petitioner had any reason to anticipate that the BOE might later alter the contract terms of the two vacant positions.

Further, West Virginia Code § 18A-4-19(a) provides that

[n]otwithstanding the provisions of section eight-b of this article relating to school service personnel or any other section of this code to the contrary, any alteration of an employment contract of a service personnel employee who is employed for more than two hundred days, which alteration changes the number of days in the employment term, shall not be deemed a creation of a new position, nor shall such alteration require the posting of the position.

Here, after hiring Mr. Tyler and Mr. Bennett, the BOE altered their employment contract terms based on the "compelling reasons" as to why their contract terms should be increased given the nature of their job duties. As such, respondent exercised its statutory authority to increase the employment contract terms pursuant to West Virginia Code § 18A-4-19(b). Therefore, we find no error.

Based on our reasoning above, we affirm the circuit court's June 10, 2016, order reversing the decision of the Board.

Affirmed.

**ISSUED**:  September 5, 2017

**CONCURRED IN BY**:
Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISQUALIFIED:**
Justice Margaret L. Workman

4